**ANDY WARHOL FOUNDATION FOR THE VISUAL ARTS, INC.; Frederick W. Hughes, as Executor of The Estate of Andy Warhol, Plaintiffs–Appellants,**

v.

**FEDERAL INSURANCE COMPANY, Defendant–Appellee.**

**Docket No. 98–7914.**

United States Court of Appeals, Second Circuit.

Argued Feb. 8, 1999.

Decided Aug. 17, 1999.

---

Howard S. Schrader, New York, New York (Paul J. Hanly, Jr., Coblence & Warner, New York, New York, of counsel), for Plaintiffs–Appellants.

Curtis C. Mechling, New York, New York (Michael F. Perlis, Charles E. Torres, Stroock & Stroock & Lavan LLP, New York, New York, of counsel), for Defendant–Appellee.

Before: WINTER, Chief Judge, CARDAMONE, and PARKER, Circuit Judges

CARDAMONE, Circuit Judge:

In this appeal we discuss the question of when a "claim" is made so as to trigger an insured's obligation to give notice to its insurer. Among other things, one necessary ingredient distilled from a survey of the decisional law is that a party that has a claim must itself assert it: a concept perfectly capsulized in Longfellow's "Why don't you speak for yourself, John?" Henry W. Longfellow, *The Courtship of Miles Standish, in The Complete Poetical Works of Henry Wadsworth Longfellow* 197 (Houghton, Mifflin & Co., Household ed.1901).

More specifically, the appeal deals with whether notice to an insurance carrier of liability claims made against its insureds was given as soon as practicable so as to trigger the company's obligation to provide coverage. The genesis of the litigation began at the 1963 funeral of President John F. Kennedy when a professional photographer named Henri Dauman snapped a picture of the President's widow, Jacqueline Kennedy, that was later published in *Life* magazine, a Time Inc. publication. The photograph was copyrighted by Time and as a result by Dauman. Subsequently, the famous American pop-artist Andy Warhol allegedly improperly incorporated the copyrighted photo into his artworks. Such use of the photo precipitated a copyright infringement suit by the copyright holders against the Andy Warhol Foundation for the Visual Arts, Inc. (Foundation) and Frederick W. Hughes, as executor of the Estate of Andy Warhol (Estate) (collectively, Warhol entities). Both these Warhol entities are insured by Federal Insurance Company (Federal), the liability carrier in this case.

When Dauman and Time filed a copyright infringement suit against the Foundation and the Estate in federal district court, the Warhol entities asked Federal to provide coverage. Federal refused on the grounds that it had not been given timely notice of the claims as required by the policy. The Foundation and the Estate thereupon instituted the instant declaratory judgment action in the United States District Court for the Southern District of New York (Griesa, J.) as plaintiffs seeking a judicial ruling that they are covered by the carrier's policy for any liability that might be found against them in Dauman's and Time's copyright infringement suit. The district court granted Federal's motion for summary judgment and dismissed the complaint. From that judgment, plaintiffs appeal.

## BACKGROUND

Plaintiffs in the declaratory judgment suit are the Foundation, a not-for-profit organization dedicated to supporting the advancement of the visual arts, and the Estate, which held most of the assets of the late Andy Warhol and is administered in New York State by plaintiff Hughes as executor. In December 1995 Federal issued an Association Directors & Officers Liability Insurance Policy (policy) to the Warhol entities, as it had for the two prior years, with a policy term from December 18, 1995 to December 18, 1996. The policy is a "claims made" policy, meaning that coverage is provided only for claims actually made against the Foundation and the Estate during the period when the policy is in effect.

### A. *Provisions of the Insurance Policy*

Separate "Insuring Clauses" of the policy spell out the various circumstances in which coverage is triggered. This case concerns only the coverage of Insured Associations—here the Foundation and the Estate—a subject addressed in Clauses 1.3 and 1.4 of the policy. Under Clause 1.3, Federal agreed to pay all "Loss" resulting from a claim for a "Wrongful Act" made against any "Insured Association" and reported to Federal during the policy period. A Wrongful Act is defined in § 8.1, as amended by Endorsement Number six, as:

[A]ny error, misstatement or misleading statement, act or omission, or neglect or breach of duty committed, attempted or allegedly committed or attempted by an Insured individually or otherwise, in the discharge of his duties to the association, or any matter claimed against him solely by reason of his serving in such capacity.... All such causally connected errors, statements, acts, omissions, neglects or breaches of duty or other such matters committed or attempted by, allegedly committed or attempted by or claimed against one or more of the Insureds shall be deemed interrelated Wrongful Acts.

Clause 1.4 further obligated Federal to pay on behalf of any Insured Association all "Loss" resulting from a claim for certain specified types of acts enumerated in Clause 1.4, including "infringement of copyright or trademark or unauthorized use of title," made against any Insured Association and reported to Federal during the policy period. Thus, the insuring clauses provide coverage generally for Wrongful Acts in Clause 1.3, and then provide coverage for certain specified types of acts in Clause 1.4.

The term "claim," used in both Clauses 1.3 and 1.4, is not defined in the policy. Nonetheless, both clauses provide for reporting to Federal of any claim "in accordance with Section 4" of the policy. Section 4.1 states

A specific Wrongful Act shall be considered to have been first reported to [Federal]:

(A) at the time that any Insured(s) first give written notice to [Federal] that a claim has been made against the Insured(s) for such Wrongful Act; or

(B) at the time that the Insured(s) first gives written notice to [Federal] (1) of the material facts or circumstances relating to such Wrongful Act as facts or circumstances having the potential of giving rise to a claim being made against the Insured(s) or (2) of the receipt of written or oral notice from any party that it is the intention of such party to hold the Insured(s) responsible for such Wrongful Act; whichever occurs first.

Further, under § 4.2, "as a condition precedent to their rights under [the] policy" the Foundation and the Estate were required to give Federal "written notice as soon as practicable of any claim" made against them.

### B. *Copyright Suit*

With these policy provisions in mind, we examine the copyright suit brought against the Foundation and the Estate. On October 25, 1994 the attorneys for Dauman

sent a letter to the Foundation with a copy to the Estate, which set forth in detail acts of alleged copyright infringement committed by the Foundation and/or the Estate. Specifically, the letter asserted that Henri Dauman was the undisputed author of the Jacqueline Kennedy photograph taken at her husband's funeral. According to Dauman's letter, this photograph was first published by *Life* magazine on December 6, 1963 with Dauman's express permission. The letter states that *Life* took "all appropriate steps to preserve Mr. Dauman's interests in the Photograph by, among other things, ... affixing a copyright symbol and Mr. Dauman's name as required by the copyright laws of the United States." This photograph, according to Dauman, was subsequently wrongfully copied and appropriated by the artist Andy Warhol for use in a large number of his artworks. The Foundation and the Estate allegedly compounded that wrong by selling these works and including the photograph in publications. The letter demanded compensation and assurances that there would be no further infringement.

On October 27, 1994 counsel to the Foundation responded, requesting additional information from Dauman's counsel and indicating a willingness to meet and "discuss your client's claim." Counsel for Dauman replied with a letter dated January 6, 1995, describing, among other things, Time's registered copyright and its number. The letter added that counsel for Dauman "have communicated with counsel for Time, who has expressed support for our position in this matter and who has further indicated a willingness to take all reasonable and necessary steps as may be appropriate to effect a recovery in this matter."

In an attempt to facilitate a settlement, on May 31, 1995 Dauman and the Foundation entered into a "tolling agreement" (agreement), which recited that Dauman and the Foundation "are aware of claims arising out of the use by Andy Warhol of a photograph of Jackie Kennedy taken by Dauman." It provided for a tolling of the statute of limitations until 30 days after written notice of termination of the agreement, during which time settlement negotiations were to be held.

These negotiations did not succeed, so Dauman and Time sued for copyright infringement in the Southern District of New York on December 6, 1996. *See Dauman v. Andy Warhol Found. for the Visual Arts, Inc.,* No. 96 Civ. 9219 (S.D.N.Y. filed Dec. 6, 1996). When Dauman and the Warhol entities attempted to negotiate a settlement, counsel for Dauman was not representing Time, and therefore did not purport to assert a claim on its behalf. Shortly before the copyright suit was instituted, Time engaged Dauman's counsel to represent it also.

### C. *Procedural History of Present Action*

The same day Dauman and Time filed their complaint—December 6, 1996—the Foundation gave notice of both claims to Federal under the policy covering the period December 18, 1995 to December 18, 1996. On December 31, 1996 Federal wrote the Foundation a letter declining coverage on the grounds that the Foundation's failure "to notify Federal of this claim until over 2 years" after Dauman's October 25, 1994 letter constituted a breach of the policy's timely notification provision.

That denial of coverage led to the instant declaratory judgment action against Federal instituted on April 15, 1997. In their complaint the Foundation and the Estate alleged breach of contract, bad faith refusal to provide insurance coverage, and also sought a declaration that they were covered by the policy with respect to the copyright infringement claims of Dauman and Time. Federal moved for summary judgment contending the undisputed facts show plaintiffs did not give the required notice. In opposition to this motion plaintiffs maintained that no claim was made by Time against either of the Warhol

entities until December 6, 1996. Plaintiffs, in addition, cross-moved for summary judgment on their breach of contract claim asserting that the undisputed facts demonstrate policy coverage and breach of the insurance contract by Federal.

The district court granted Federal's motion for summary judgment on the grounds of untimely notice, denied plaintiffs' motion for the same relief, and dismissed plaintiffs' complaint. In its opinion, the district court held that "the requirement in Clause 4.2 of notice as soon as practicable" applied to Dauman's October 25, 1994 claim of copyright infringement. It further ruled that Dauman's January 6, 1995 letter "broadened the claim to include Time." The district court therefore concluded that coverage under the policy for any claim in the Dauman action was barred by the failure of plaintiffs to provide Federal with notice of the claims until after the filing of the lawsuit in 1996. See Andy Warhol Found. for the Visual Arts, Inc. v. Federal Ins. Co., No. 97 CIV. 2716, 1998 WL 292326, at *4 (S.D.N.Y. June 2, 1998).

On appeal plaintiffs do not contest that the notice they gave Federal of the Dauman claims was untimely. Instead, they challenge only that portion of the judgment, entered June 4, 1998, granting summary judgment and dismissing their complaint with respect to insurance coverage for the claims of Time. We reverse.

## DISCUSSION

### I Standard of Review & Choice of Law

We review *de novo* the district court's grant of summary judgment. *See Ace Auto Body & Towing, Ltd. v. City of New York*, 171 F.3d 765, 770 (2d Cir.1999). In the present suit both parties assert that the undisputed facts support such relief in their favor. Under Fed.R.Civ.P. 56(c), summary judgment is appropriate where the parties' submissions "show that there is no genuine issue as to any material fact

and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P 56(c); *see also Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991) (discussing summary judgment standard).

 Subject matter jurisdiction in this case is based upon diversity of citizenship of the parties. *See* 28 U.S.C. § 1332 (1994). Here the insureds reside in New York, the policy was delivered to them in New York, and the claim against them arose in that State. Hence, since New York is the state most intimately concerned with the outcome, New York law governs the disposition of the case. *See AXA Marine & Aviation Ins. (UK) Ltd. v. Seajet Indus. Inc.*, 84 F.3d 622, 624 (2d Cir.1996). Under New York law, as well as the terms of the policy, compliance with the notice provision is a condition precedent to the insurer's obligations under the policy. *See Commercial Union Ins. Co. v. International Flavors & Fragrances, Inc.*, 822 F.2d 267, 271 (2d Cir.1987).

### II Timeliness of Notice of Claim

The policy required that the Foundation and the Estate, as a condition precedent of coverage, give Federal written notice "as soon as practicable of any claim made against any of them for a Wrongful Act." The term "claim," as noted, is not defined in the policy. But Federal contends that the January 6, 1995 letter from counsel for Dauman asserted a claim by Time against plaintiffs, and thus their failure to timely notify it of this letter permits it to disavow coverage for any loss arising from the Time claims. Plaintiffs insist that the January 1995 letter is not a claim by Time because it is not an assertion made by Time itself and it does not adequately indicate a demand by Time for damages. They add that they were not aware of any claim by Time until the Dauman and Time suit was filed on December 6, 1996. Hence, they contend that notice to Federal of Time's claims the same day its suit was filed satisfied the notice requirement for coverage.

All parties agree that under New York law late notice of a claim vitiates coverage under a "claims made" policy. The dispute regarding coverage requires us to decide whether under that State's law the 1995 letter or the filing of the 1996 suit marked the first assertion of a claim by Time under the policy. After resolving this question, we must also address three alternative grounds Federal posits for affirming the grant of summary judgment.

### A. *Insurance Policy Interpretation*

We start our analysis with the premise that an insurance policy, like any contract, must be construed to effectuate the intent of the parties as derived from the plain meaning of the policy's terms. *See Dicola v. American S.S. Owners Mut. Protection & Indem. Ass'n, Inc. (In re Prudential Lines Inc.)*, 158 F.3d 65, 77 (2d Cir.1998). If the language of the insurance contract is unambiguous, we apply its terms. Where its terms are reasonably susceptible to more than one interpretation, the policy must be regarded as ambiguous. *See Haber v. St. Paul Guardian Ins. Co.*, 137 F.3d 691, 695 (2d Cir.1998).

When a court decides, after examination of the contractual language, that an insurance policy is ambiguous, it looks outside the policy to extrinsic evidence, if any, to ascertain the intent of the parties. *See id.* If, as is often the case, the ambiguities "cannot be resolved by examining the parties' intentions, then the ambiguous language should be construed in accordance with the reasonable expectations of the insured when he entered into the contract." *Id.* at 697 (applying New York's "reasonable expectations doctrine"). In such situations the ambiguities in the policy ordinarily are construed in favor of coverage and against the insurer, because as the drafter of the policy the insurer is responsible for the ambiguity. *See Dicola*, 158 F.3d at 77; *Westchester Resco Co. v. New England Reins. Corp.*, 818 F.2d 2, 3 (2d Cir.1987) (per curiam). Even though a contract may be ambiguous, summary judgment may nonetheless be appropriate where a court is in position to resolve the ambiguities through a legal, rather than factual, construction of its terms. *See Dicola*, 158 F.3d at 77.

### B. *Meaning of "Claim"*

The central dispute in the present litigation concerns the meaning of the word "claim" as set out in the policy. In our view the district court's holding that Time's claims were included in the January 1995 letter written by Dauman's attorney setting forth Dauman's claims misapprehends the meaning of the term claim as it is defined in insurance cases.

It may appear at first blush that deciding when Time's claim was made is an uncomplicated task. But because the policy contains no definition of the term, and the arguments of both parties appear at least plausible, further examination of the case law interpreting "claims made" under policies and the term "claim" itself is required. Here, for purposes of deciding when Time's claims were first asserted, we think the policy ambiguous, but we also think that the ambiguity may appropriately be resolved by applying the definition gleaned from the case law.

We have ruled in a similar insurance case under New York law that the "ordinary meaning" of claim is "an assertion by a third party that in the opinion of that party the insured may be liable to it for damages [which are] within the risks covered by the policy." *American Ins. Co. v. Fairchild Indus., Inc.*, 56 F.3d 435, 439 (2d Cir.1995). Various district court cases have reiterated the *American Insurance* requirement that to constitute a claim within the meaning of an insurance policy, the demand must be by the third party to whom a right has allegedly accrued. *See Garfield Slope Hous. Corp. v. Public Serv. Mut. Ins. Co.*, 973 F.Supp. 326, 334–35 (E.D.N.Y.1997) (citing various definitions of claim, including "a demand *by one to whom a right has accrued* for payment of

a loss suffered due to acts of the insured" and "the assertion of a liability to the party making it" (emphasis added)); *Home Ins. Co. v. Spectrum Info. Techs., Inc.*, 930 F.Supp. 825, 846 (E.D.N.Y.1996) (defining claim as "a demand *by a third party* against the insured for money damages or other relief" (emphasis added)); *National State Bank v. American Home Assurance Co.*, 492 F.Supp. 393, 396 (S.D.N.Y.1980) (defining claim as "assertion of a legal right *by a third-party* against the insured" (emphasis added)). In addition, *Black's Law Dictionary* defines claim as "[t]o demand as one's own or as one's right." *Black's Law Dictionary* 247 (6th ed.1990). As a consequence, for an assertion or notice to the insured to be a claim it must be made by the party whose rights allegedly have been violated.

### C. *Application of Definition*

 Looking again at the January 1995 letter written by counsel for Dauman, it opens with the statement that: "we represent Henri Dauman in this matter." It goes on to state that in response to the Warhol parties' letter of October 1994, which requested additional information, "we wish to inform you of the following," and sets out three paragraphs of details. Paragraph one lists the publications in which the photograph had appeared with Dauman's name and a copyright symbol. Paragraph two lists the publications in which the photograph had appeared without attribution to Dauman and without Dauman's permission. Paragraph three states that the photograph is registered as part of a compilation, gives the copyright registration number and declares that Time Inc. is the holder of that copyright.

The letter then continues, "[w]e have communicated with counsel for Time, who has expressed support for our position in this matter and who has further indicated a willingness to take all reasonable and necessary steps ... to effect a recovery in this matter." Ending the paragraph is more information regarding Dauman's

copyright registration of a "Jackie composite image." In an affidavit, Dauman's attorney conceded that at the time when this letter was written he did not represent Time.

We think the language mentioning Time, particularly when viewed in the context of the entire letter, does not sufficiently state a claim on behalf of Time for purposes of the policy's notice requirements. First, and most important, the letter was not from Time or Time's counsel. To constitute a claim within the meaning of an insurance contract, the assertion must be made by or on behalf of the party making the claim. Second, the language stating Time's alleged "willingness to take all reasonable and necessary steps ... to effect a recovery in this matter," does not of necessity state a claim. A reasonable reading of this assertion, made by Dauman's attorney, is that Time is willing to take steps to support the resolution of *Dauman's claim*, since Time had not yet made its own assertion of the insured's liability to it. The letter does not suggest that Time seeks to recover in its own right, and in fact makes no demand for relief on Time's behalf.

Hence, the letter fails to meet the requirement of a claim because it lacks a request to the insured for damages within the risks covered by· the policy by the party whose rights allegedly were violated. *See Windham Solid Waste Management Dist. v. National Cas. Co.*, 146 F.3d 131, 134 (2d Cir.1998). Or, in other words, Dauman's lawyer could not speak for Time anymore than John Alden could speak for Miles Standish. To assert a claim, Time should have spoken itself.

### III Other Federal Arguments

Beyond the letter, Federal maintains that we must affirm the district court's grant of summary judgment on three alternative bases. First, it argues that the 1995 tolling agreement is evidence that the Foundation was aware of Time's claims, because, in its opinion, the agreement tolls the statute of limitations for *all* claims

relating to misappropriation of the photograph. The Warhol parties respond that the agreement by its own terms is limited to the claims of Dauman. Second, Federal asserts that Dauman's and Time's claims are identical, emphasizing that both claims stem from Time's copyright, and thus the late notice of Dauman's claims also prevents coverage for Time's claim. The Foundation and the Estate contend that under copyright law, the claims are different because the copyright ownership of Dauman and Time are separate and distinct. Third, Federal declares that even assuming that Dauman's and Time's claims are separate and distinct, coverage of Time's claim is barred because both sets of claims arise out of the same Wrongful Act, as defined in the policy. We discuss each of Federal's propositions in turn.

■ 1. *Tolling Agreement.* The agreement, entered into only by Dauman and the Foundation, states that "[a]ll limitations periods which may be applicable to any Claim of any kind whatsoever *by Dauman, or any of his heirs or assigns,* against the Foundation, ... are hereby tolled ...." (emphasis added). Obviously the agreement provides no indication that the Foundation was aware of claims by Time. It contains no references to Time or Time's claims. As Time was not a party to the agreement, it was not bound by any agreement entered into by Dauman unless it agreed to be bound. And, nothing suggests that Time consented to be bound.

■ Although Federal contends that because the agreement covers Dauman's heirs and assigns, it thereby includes Time's claims, this contention also fails. Time has its own copyright to the photograph, based on its ownership of copyright to a "collective work," the December 6, 1963 issue of *Life* as a whole, see 17 U.S.C. §§ 101, 201(c) (1994). Since Time possesses an independent copyright, as discussed below, it is not included in the agreement as an heir or assignee of Dauman.

■ 2. *Bases for Claims Under Copyright Law.* Next we address the iden-

tical claim assertion. Federal insists that Dauman's and Time's claims are identical. Of course, they are not. Dauman's claim arises from his alleged ownership of the copyright of an individual photograph. He contributed an individual photograph to the December 1963 issue of *Life* magazine, a "collective work." Under 17 U.S.C. § 101, a collective work is defined as "a work, such as a periodical issue ... in which a number of contributions, constituting separate and independent works in themselves, are assembled into a collective whole." Thus, while Time's copyright is to the collective work, under 17 U.S.C. § 201(c), which states that copyright to an individual contribution in a collective work "is distinct from copyright in the collective work as a whole, and vests initially in the author of the contribution," Dauman's copyright clearly remains independent from Time's.

■ The distinction between the separate claims of Dauman and Time is reinforced by existence of separate standards that would be applicable to the "fair use" defense available against each claim. An element of that statutory defense is the "amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107(3); *see also Consumers Union of United States, Inc. v. General Signal Corp.,* 724 F.2d 1044, 1050 (2d Cir.1983). The Kennedy photograph constitutes a very small portion—allegedly less than one percent—of the entire December 6, 1963 collective work to which Time holds a copyright. In contrast, because Dauman holds a copyright to the individual photograph, the allegedly infringing Warhol artworks make use of Dauman's entire copyrighted work. Dauman's and Time's copyright claims are therefore clearly not identical. Since as a matter of copyright law, their claims are different, the provision of coverage under Federal's policy must be separately addressed for each.

■ 3. *Wrongful Act.* Federal asserts that the policy's notice provision means

that the policy will not provide coverage for any loss on account of a Wrongful Act where the insured has failed to give timely notice of "any" claim for such Wrongful Act. Referring again to this section, the policy states: "the Insured(s) shall, as a condition precedent to their rights under this policy, give to [Federal] written notice as soon as practicable of any claim made against any of them for a Wrongful Act. . . ." The text of this provision does not say any claim for "such Wrongful Act," but rather requires the notice for "any claim . . . for a Wrongful Act." The policy's plain language does not provide that the insured's failure to provide notice for one claim prohibits coverage of another claim simply because they are both related to the same Wrongful Act. Thus, Federal cannot properly deny coverage of Time's claims on the grounds that the Warhol entities failed to provide timely notice of Dauman's related claims.

## CONCLUSION

For the foregoing reasons, the grant of summary judgment as to the claims of Time is reversed, and the case is remanded to the district court for further proceedings not inconsistent with this opinion.