**CHIQUITA INTERNATIONAL LIMITED and Its Interested Cargo Underwriters, Plaintiffs,**

v.

**LIVERPOOL AND LONDON STEAMSHIP PROTECTION AND INDEMNITY ASSOCIATION LIMITED, Defendant.**

No. 00 CIV. 0247 RWS.

United States District Court,
S.D. New York.

Nov. 6, 2000.

Clark, Atcheson & Reisert by Richard J. Reisert, New York City, for Plaintiffs.

The Chalos Law Firm by Michael G. Chalos, Owen F. Duffy, Oyster Bay, NY, for Defendant.

## OPINION

SWEET, District Judge.

On occasion, long accepted practices are challenged under an unusual fact situation, and the instant motion for summary judgment brought by plaintiff Chiquita International Limited and Its Interested Cargo Underwriters ("CIL") against defendant Liverpool & London Protection and Indemnity Management Limited ("L & L"), pursuant to Rule 56 of the Federal Rules

of Civil Procedure, is one such instance. The motion seeks specific performance of a provision in a Letter of Undertaking ("LOU") issued by L & L to avoid the arrest of a vessel of its insured. L & L has opposed the motion and cross-moved for summary judgment dismissing the complaint. For the reasons set forth below, with some misgiving, the motion by CIL is granted.

### The Parties

CIL is a corporation organized and existing under the laws of Bermuda and involved in the global business of marketing fresh fruit and produce.

L & L is a mutual insurance company organized and existing under the laws of the United Kingdom.

### Prior Proceedings

CIL filed a complaint seeking to enforce a provision of the LOU on January 12, 2000. Subsequently, on April 20, 2000, CIL filed a complaint for cargo damage against the motor vessel BRETAGNE ("M/V BRETAGNE"). On June 21, 2000, a pretrial conference was held, at which time the two cases were consolidated for discovery and the instant motion was adjourned to permit the exchange of survey reports.

CIL filed its motion for summary judgment on June 20, 2000, L & L cross-moved for summary judgment on August 17, 2000, and the matter was deemed fully submitted on August 18, 2000.[1]

### Facts

The following facts are drawn from the parties' Rule 56.1 Statements and other submissions and, as required, are construed in the light most favorable to the non-movant.

In 1999, the M/V BRETAGNE was chartered by the Great White Fleet from Bretagne Maritime S.A. to transport a shipment of bananas from Central America to Northern Europe. CIL, an affiliate of the Great White Fleet, used the vessel to ship 156,129 boxes of fresh bananas from the ports of Turbo, Colombia and Chiriqui Grande, Panama between April 7 and 11, 1999.

The cargo of bananas was discharged from the vessel at Bremerhaven, Germany between April 26 and 28, 1999. During the course of discharge from the M/V BRETAGNE some of CIL's cargo was found to have already ripened. CIL rejected a portion of the cargo and made arrangements to have that cargo shipped back to Central America. CIL destroyed those bananas.

On May 7, 1999, CIL's attorney alleged that the vessel was responsible for damages to the cargo and demanded security from the owner of the M/V BRETAGNE, specifically requesting that the vessel's Protection & Indemnity ("P & I") Underwriter provide a LOU in the amount of $1,300,000.00. L & L, the vessel's P & I Underwriter, did not immediately issue the LOU for several reasons. The M/V BRETAGNE was undergoing repairs at a shipyard in Greece, there were protracted negotiations regarding the terms and conditions of the LOU as to the proper forum for the litigation of the cargo claims because of different jurisdiction provisions in the bills of lading issued by CIL and in the charter party, and there was serious disagreement as to the amount of the security that should be provided.

On October 7, 1999, L & L did issue the LOU to CIL in the form requested by CIL for the amount of $1,250,000.00. The LOU, which obviated an arrest of the vessel, is annexed hereto as Appendix A and contains the following provision:

> 3. Upon demand, [L & L will] cause to be filed a bond in form and sufficiency of surety satisfactory to [CIL] or to the above tribunal in the above amount [of $1,250,000.00], securing [CIL's] claim

---

[1] Both parties submitted letters identifying additional case law after August 18, 2000. Those letters were also considered by the court in resolving the instant motion.

against said vessel in the aforementioned amount.

The LOU also states that the letter was provided:

> ... with the understanding that any such action will proceed as though the M/V BRETAGNE has been arrested pursuant to an *in rem* warrant of arrest and released upon the giving of this security.

At the beginning of the 1999 policy year, the shipowner members of L & L had begun to consider whether it was practical to continue operating the L & L as a mutual insurance association. Alternatives that were considered were widely publicized in the maritime press during the course of 1999, including the daily newspaper Lloyd's List, the weekly newspaper Tradewinds, and the bi-weekly magazine Fairplay, all of which enjoy a wide circulation in the maritime industry.

■ The shipowner members of L & L voted to place the Association into "run-off" and seek coverage for their future protection and indemnity risks with another P & I Mutual located in Newcastle, England.[2] As regards L & L, this meant that L & L would not renew the policies of insurance for any of its members beyond February 20, 2000, and that it would not underwrite any new protection and indemnity risks beyond that date. The decision to go into run-off was widely reported in the maritime and industry publications during the summer of 1999 and was known to CIL prior to the issuance of the LOU.

Twenty-seven days after the LOU was provided to CIL, on November 3, 1999, CIL requested assurance with respect to the reliability of the LOU, citing industry reports published during the summer months of 1999 regarding the "wind-up and run-off" of L & L. L & L responded that it was not winding up its affairs, but that it was intending to proceed into "run-

off" on February 20, 2000, that its existing member base would be transferred to other P & I Clubs, and that the proposed run-off would have no bearing on the CIL claim or any other claims that were already pending because the regulations regarding solvency margins for insurers in the United Kingdom required L & L to maintain sufficient funds in reserve to meet all of its outstanding and anticipated obligations.

On December 22, 1999, CIL invoked paragraph three of the LOU and demanded that L & L cause a bond to be filed. On January 12, 2000, CIL filed the complaint in this action seeking an order from the Court directing L & L to issue substitute security in the form of a surety bond.

After the complaint was filed and this Court had issued an order for a pretrial scheduling conference, and just prior to the expiration of the statute of limitations for claims against the M/V BRETAGNE, on April 20, 2000, CIL commenced an action for cargo damage against the vessel, her owner, and her managers. CIL alleged in its complaint that the cargo was damaged due to the fault, neglect and/or breach of contract of the defendant carriers, as well as the unseaworthiness of the vessel, and requested issuance of process *in rem* against the M/V BRETAGNE.

During the period that L & L is in run-off, it is intended that the claims will continue to be handled by L & L P & I Management Limited, and will be dealt with in the same manner as they have been prior to the run-off. Pursuant to certain insurance regulations of the United Kingdom, L & L is required to satisfy the Financial Services Authority of its ability to maintain and manage an orderly run-off.

As of February 20, 2000, when L & L officially went into run-off, there were a number of claims still pending for various policy years and policy years 1996 to 1999

---

**2.** "Run-off" is a term used in England and the marine insurance industry to describe an orderly termination of an insurance business.

inclusive remaining open. In compliance with the insurance regulations of the United Kingdom, L & L is required to maintain sufficient reserves in the form of cash, investments and reinsurance to pay all of the claims that are still pending, including CIL's claim.

Pursuant to Rule 32 of the Rules of the L & L mutual insurance association, a shipowner member of the association is liable to contribute additional funds to L & L when required by the managers to establish solvency margins, to guarantee funds if required by law to permit the continued operation of the association, or to make up any deficit in the funds of the association.

In addition to the LOU that was issued to CIL, L & L has issued and will continue to issue LOUs as security for other claims pending against its members for the policy years 1994 through 1999. None of the parties currently holding LOUs issued by L & L have requested that those LOUs be replaced by surety bonds. Since going into run-off, L & L has not defaulted on any of its financial obligations and, in particular, has not defaulted in respect to any of its obligations under LOUs that have been issued.

The procurement of a surety bond in favor of CIL will cause L & L to incur additional inconvenience and expenses by way of premiums to maintain any such bond. L & L also suggests other claimants may follow suit, causing the inconvenience and expenses to increase exponentially.

## Discussion

### I. The Summary Judgment Standard

■ Rule 56(c) of the Federal Rules of Civil Procedure provides that a motion for summary judgment may be granted when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Second Circuit has repeatedly noted that "as a general rule, all ambiguities and inferences to be drawn from the underly-

ing facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." *Brady v. Town of Colchester,* 863 F.2d 205, 210 (2d Cir.1988) (*citing Celotex Corp. v. Catrett,* 477 U.S. 317, 330 n. 2, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (Brennan, J., dissenting)); *see Tomka v. Seiler Corp.,* 66 F.3d 1295, 1304 (2d Cir.1995); *Burrell v. City Univ.,* 894 F.Supp. 750, 757 (S.D.N.Y.1995). If, when viewing the evidence produced in the light most favorable to the non-movant, there is no genuine issue of material fact, then the entry of summary judgment is appropriate. *See Burrell,* 894 F.Supp. at 758 (*citing Binder v. Long Island Lighting Co.,* 933 F.2d 187, 191 (2d Cir.1991)).

■ Materiality is defined by the governing substantive law. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[T]he mere existence of factual issues—where those issues are not material to the claims before the court—will not suffice to defeat a motion for summary judgment." *Quarles v. General Motors Corp.,* 758 F.2d 839, 840 (2d Cir.1985).

■ Where a motion for summary judgment presents a question concerning the construction of the terms of a written contract, the question can be considered purely a legal issue. *See, e.g., Flair Broadcasting Corp. v. Powers,* 733 F.Supp. 179, 184 (S.D.N.Y.1990); *Price v. Bartkowiak,* 715 F.Supp. 76, 79 (S.D.N.Y.1989). This is such a case.

### II. The LOU Grants CIL The Right To Demand A Bond

#### A. The Principles Governing Interpretation Of The LOU

■ The first step in interpreting a contract is to determine the interpretation

that will "give effect to the intent of the parties as expressed in the clear language of the contract[ ]". *Village of Sylvan Beach v. Travelers Indemn. Co.*, 55 F.3d 114, 115 (2d Cir.1995) (citations omitted). In making this initial interpretation, the court must determine whether the contract terms are ambiguous. A contract provision is unambiguous where it has "a definite and precise meaning, unattended by danger of misconception in the purpose of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion." *Sayers v. Rochester Telephone Corp.*, 7 F.3d 1091, 1095 (2d Cir.1993). A contract is not ambiguous merely because the parties argue for different interpretations, nor where the interpretation urged by one party strains the contract language beyond its reasonable and ordinary meaning. *See Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir.1989).

▮▮▮ If the terms of a contract are susceptible to more than one reasonable interpretation, then the court should consider extrinsic evidence to determine the parties' intent. *See Andy Warhol Foundation for the Visual Arts, Inc. v. Fed. Ins. Co.*, 189 F.3d 208, 215 (2d Cir.1999). If the extrinsic evidence is inconclusive, the court should apply the interpretative rule that ambiguities in a contract are ordinarily construed against the drafter. *See Navieros Oceanikos, S.A. v. S.T. Mobil Trader*, 554 F.2d 43, 47 (2d Cir.1977) (general rule of construction, which also applies in admiralty, is to construe ambiguous contract language against drafter). If the ambiguities can be resolved through a legal construction of the policy terms, rather than a factual one, summary judgment may be appropriate even where the policy is ambiguous. *See Warhol*, 189 F.3d at 215 (citations omitted).

---

**3.** It is not actually clear from the papers that CIL drafted the LOU, although it is apparent that the terms were those sought by CIL. In

## B. *L & L Is Required To File A Bond Upon Demand Pursuant To The LOU*

▮▮▮ The instant dispute turns on the interpretation of paragraph three of the LOU, which states that:

> Upon demand, [L & L will] cause to be filed a bond in form and sufficiency of surety satisfactory to [CIL] or to the above tribunal in the above amount [of $1,250,000,000], securing [CIL's] claim against said vessel in the aforementioned amount.

CIL contends that the above-quoted language is unambiguous and accords it the right to require L & L to issue a bond in the amount of $1,250,000.00 upon demand.

L & L objects that CIL's interpretation is not supported by the language of the LOU or, at least, is not the only reasonable interpretation. First, in its answer to the complaint seeking enforcement of the LOU, L & L has asserted that CIL may not demand a bond unless "L & L has changed its position to the detriment of [CIL]," implying that the demand must be reasonable. Second, L & L notes the qualification in paragraph three referencing court approval, and contends that the reasonable interpretation of this language is that the LOU provides L & L with the protection of a safe harbor against unilateral demands from CIL that L & L file a bond.

L & L further contends that, at a minimum, the language of the LOU is susceptible to two reasonable interpretations and therefore should be construed against CIL because it drafted the LOU.[3] *See Navieros Oceanikos*, 554 F.2d at 47.

The contention that CIL may not demand a bond unless L & L has changed its position to the detriment of CIL does not find support in the language of the LOU. There is no use of the word "reasonable" or any similar term in paragraph three

any case, CIL has not rebutted L & L's characterization.

with respect to CIL's ability to demand the filing of a bond. L & L's interpretation would interject subjectivity and uncertainty where none otherwise exists.

Similarly, the contention that paragraph three requires CIL to obtain court approval in order to require L & L to file a bond is not a reasonable interpretation of the LOU. Paragraph three states that L & L shall file a bond "upon demand." Paragraph three then provides that this bond shall be "in the form and sufficiency of surety satisfactory to you or to the above tribunal in the above amount." This language does not require that the court find it satisfactory that L & L be required to file a bond. Rather, it requires that the form and sufficiency of surety of the bond filed meet with the approval of either CIL or the court.[4]

Thus, the language of the LOU is unambiguous and, pursuant to paragraph three, CIL may require L & L to file a bond upon demand. However, L & L contends that the inquiry cannot end there.

### C. *The Rules Of Admiralty Do Not Preclude CIL From Demanding That L & L File A Bond*

L & L maintains that the rights and obligations of the parties under the instant LOU cannot be determined with reference to the language of the LOU alone, but are also governed by the Supplemental Rules for Certain Admiralty and Maritime Claims (the "Supplemental Rules"), the case law, and the equitable powers of the court. Under these authorities, L & L contends that CIL cannot justify requiring L & L to file a bond.

L & L contends that questions of maritime security are always subject to the Supplemental Rules. The LOU by its terms is a substitute for the M/V BRE-

TAGNE and its legal effect is the same as if the vessel itself was present before the court. According to L & L, because this is a proceeding *in rem,* with the LOU—as a substitute for the vessel—providing the only basis for the court's jurisdiction, the Supplemental Rules apply. *See* Supp. Admiralty and Maritime Claims Rule A (Supplemental Rules apply to admiralty and maritime claims within the meaning of Fed.R.Civ.P. 9(h) with respect to actions in rem). In addition, L & L notes that the LOU states that the letter was provided:

> ... with the understanding that any such action will proceed as though the M/V BRETAGNE has been arrested pursuant to an *in rem* warrant of arrest and released upon the giving of this security.

According to L & L, pursuant to this non-waiver of rights clause, it reserved any and all rights consistent with an action *in rem,* including those rights to which it is entitled under the Supplemental Rules.

CIL does not dispute that this is an *in rem* proceeding to which the Supplemental Rules apply. However, CIL maintains that those rules do not apply to the interpretation of the LOU bond provision so as to preclude it from requiring L & L to file a bond in accordance with the language of the LOU.

L & L points to Supplemental Rules E(5) and E(6) as precluding CIS from requiring it to file a bond absent court approval. First, L & L notes that, under Supplemental Rule E(5), when the parties are unable to agree whether a particular form of security for a maritime claim is sufficient, the court is to make a determination. *See* Supp. Admiralty and Maritime Claims Rule E(5)(a) ("The parties may stipulate the amount and nature of ... security. In the event of the inability

---

**4.** A surety is the means by which a bond is assured. *See Black's Law Dictionary* 1455 (7th ed.1999). For example, under Local Rule 65.1.1(b), a bond must be secured by the deposit of cash or government bonds in the amount of the bond, or by the undertaking or guaranty of an authorized corporate surety, or by the undertaking or guaranty of two individual residents of the Southern or Eastern Districts of New York who meet certain requirements. *See* Local Civil Rule 65.1.1(b).

or refusal of the parties so to stipulate the court shall fix the principal sum of the bond or stipulation ...."). Rule E(5) also provides that if the vessel owner simply presents security to the court on its own initiative then the court is the one to approve the security. *See* Supp. Admiralty and Maritime Claims Rule E(5)(b); *see also Keystone Shipping Co. v. S.S. Monfiore*, 409 F.2d 1345, 1346 (5th Cir.1969) ("Without a doubt a Judge, acting as a seagoing chancellor ... could exert his discretion in a way to require a party to provide or accept alternative security under proper conditions of safety but he need not.") (internal citation omitted). According to L & L, it follows that CIS may not obtain a bond without the approval of this Court—and, of course, L & L maintains that such approval would be unwarranted in this case.

CIL does not deny that, under Rule E(5)(a), in the event that the parties are unable to stipulate to a security, the court shall fix the appropriate bond or stipulation. *See* Supp. Admiralty and Maritime Claims Rule E(5)(a). In this case, however, the parties were able to reach a stipulation, namely, the one set forth in the LOU. The LOU includes a provision that L & L must file a bond upon demand by CIS. CIS is seeking to enforce a provision to which the parties have already stipulated rather than to obtain a new stipulation for a security. Therefore, Rule E(5)(a) does not apply.

Moreover, *In re Slobodna Plovidba (The M/V Jablanica)*, No. M86–209 CA3, 1987 WL 20043, at \*1 (W.D.Mich. March 26, 1987), cited by L & L for the proposition that a defendant ship owner may not be required upon demand of a plaintiff to substitute a bond for a LOU, is inapposite. That case, which involved a LOU filed in support of a Rule F petition to limit liability, did not involve interpreting the terms of the LOU nor did the plaintiffs rely on such terms. Rather, the plaintiffs urged that they had the right to demand a bond under Local Rule 65.1.1 and *In re Compa-*

*nia Naviera Marasia, S.A. (Motorvessel Atlantico)*, 466 F.Supp. 900 (S.D.N.Y. 1979). The fact that the *M/V Jablanica* court found that a bond could not be required on that basis has no bearing here.

■ Rule E(5)(b) is also inapplicable, as this case does not involve a situation where the vessel owner presented security to the court on its own initiative, which security would then be subject to the court's approval. *See* Supp. Admiralty and Maritime Claims Rule E(5)(b). Instead, the parties previously agreed upon the security, namely, the LOU and its terms, which terms include a provision for the substitute security of a bond upon demand by CIL.

■ L & L also urges the applicability of Supplemental Rule E(6), which addresses the court's power to order new, additional, enhanced or reduced security after the initial security "is taken [by] the court." *See* Supp. Admiralty and Maritime Claims Rule E(6). First, L & L contends that there is no particular form of security mandated by the Supplemental Rules, and that the case law demonstrates that a LOU is as acceptable as a bond to secure a cargo claim. *See Nelson Marketing Int'l, Inc. v. Wilhelmsen Lines*, 2000 AMC 1325 (C.D.Cal.2000) (LOU is adequate security to release a vessel); *Maritima Antares, S.A. v. Vessel ESSI CAMILLA*, 633 F.Supp. 694, 695 (E.D.Va.1986) (LOU no less adequate than cash or bond as security).

Second, according to L & L, the LOU was the security agreed upon by the parties and CIL, by demanding a bond, is seeking enhanced security within the meaning of Rule E(6). Under Rule E(a), a court should approve enhanced security only where the moving party has shown good cause based on fraud, misrepresentation, or mistake. *See Industria Nacional Del Papel, CA. v. M/V Albert F.*, 730 F.2d 622, 626 (11th Cir.1984) (pursuant to Rule E(6), court should not require additional security absent fraud, misrepresentation,

or mistake); *Vessel ESSI CAMILLA,* 633 F.Supp. at 695–96 (plaintiff, who had accepted LOU in exchange for not arresting defendant's vessel, could not later seek arrest of vessel on ground that LOU was insufficient security absent showing that letter was inadequate security due to fraud or · misrepresentation); *see also Rolls Royce Industrial Power (India) v. M/V FRANTZIS M.,* No. 95 Civ. 2630, 1995 WL 846690, at *9 (S.D.N.Y. July 24, 1995) (affirming general proposition that courts are averse to changing amount of security required where it was initially agreed upon by the parties).

The case law dealing with the form and sufficiency of security furnished for maritime claims is "surprisingly sparse." *M/V JABLANICA,* 1987 WL 20043, at *2. In fact, although LOUs such as the one at issue here, including letters containing a provision for filing of a bond upon demand, are customary within the maritime industry, *see Motorvessel Atlantico,* 466 F.Supp. at 902 (discussing long-standing practice in maritime industry of use of LOUs), there are no reported cases addressing interpretation of the customary bond provision found in the subject LOU.

The case law cited by L & L for the proposition that a LOU is sufficient security does not answer the question presented here. CIL avers that the LOU is sufficient because it includes a provision for filing of a bond upon demand. In V*essel ESSI CAMILLA,* 633 F.Supp. at 695, cited by L & L, the plaintiffs agreed to a LOU and then later sought to arrest the vessel anyway. There is no indication as to whether the LOU contained the customary bond provision included in the instant LOU, nor was that an issue in the case. In *Nelson Marketing,* 209 F.3d 200, 2000 A.M.C. at 1325, also cited by L & L, the dispute centered on what the amount of the undertaking the defendants were obliged to stipulate to in the LOU. *See id.* at 1326. It is noted that, ultimately, the court approved a LOU that contained a bond provision identical to the one con-

tained in the instant LOU. See id. at 1328. However, the issue which is the subject of this motion was not presented.

Similarly, *L & L Marine Transportation v. M/V Hokuetsu Hope,* 895 F.Supp. 297 (1995), also cited by L & L, concerns a different issue. In that case, the plaintiffs accepted a letter of security in which the amount of the undertaking was $50,000, and then later sought to have the amount increased to $150,000. *See id.* at 299. The letter included the customary bond provision, as here, but that was not the issue in the case. *See id.* The court found that an increase in the amount of the undertaking was not warranted under Rule E(6). *See id.* at 300–01. In this case, however, CIL is not seeking an increase in the amount of the undertaking. Rather, CIL is seeking to enforce the bond provision, which states that L & L will file a bond in the predetermined amount of 1,250,000.00 upon CIL's demand.

L & L has cited no case which stands for the proposition that a party seeking to enforce a bond provision contained within a LOU is thereby seeking to enhance the security, triggering application of Rule E(6).

The closest authority, predictably, is of the Honorable Charles S. Haight in *Motorvessel Atlantico,* 466 F.Supp. 900, which involved approval of a LOU filed in support of a Rule F petition to limit liability. Judge Haight found that the LOU did not comply with General Rule 31 (now Local Civil Rule 65.1.1) because it was executed on behalf of the plaintiff's underwriter rather than by a domestic surety company. *See id.* at 902. Notwithstanding, the court noted that such LOUs are common practice in the maritime industry, *see id.* and approved the letter as adequate security subject to the "absolute right" of any claimant "to reject the [P & I club] as surety, in which event this ad interim form of security comes automatically to an end, and [the ship owner] must file security in accordance with the requirements of General Rule 31." *See id.* at 903. The bond on

demand provision in the instant LOU can be analogized to the claimant objection method employed in *Motorvessel Atlantico,* 466 F.Supp. 900.

Accordingly, Rule E(6) will not apply until the bond required by the parties' agreement is filed. The Supplemental Rules do not preclude CIL from demanding that L & L file a bond, as provided for in the LOU.

### D. *The Circumstances Underlying The Issuance Of The LOU Do Not Alter Its Term*

■ From unrebutted affidavit testimony, it appears that Enterprises Shipping & Trading ("Enterprises"), the managers of the M/V BRETAGNE, had a relationship with L & L by virtue of a position on its board, while at the same time Enterprises enjoyed a favorable commercial relationship with CIL. The issuance of the LOU was delayed at one point by an accounting issue between Enterprises and L & L. After a month of discussion, L & L on June 8, 1999, advised CIL that it did not intend to issue a LOU. Through June and July, discussions continued including regarding an issue as to the amount of the damages claim. During this period, CIL was aware of L & L's financial status.

Twenty-seven days after the issuance of the LOU, CIL sought to invoke the bond demand provision although it had not yet filed an action for damages. In effect, CIL has conceded that the demand for security and the instant motion are calculated to put pressure on L & L in connection with the resolution of the cargo claim. In its discussion of specific performance, CIL has stated:

> If L & L is compelled to issue the bond it may be more willing to resolve this dispute in good faith and without further delay, a willingness that there is no way to measure. In addition, damages of anything less than the LOU amount ($1,250,000) might inadequately compensate CIL, because the ultimate judgment might also include interest and costs, items which would be covered by the bond.

L & L contends that CIL is trying to force it into settlement by invoking the bond demand provision. However, characterizing the bond demand as a litigation strategy, which it may well be, does not alter the language of the LOU, and fails to raise to a level of inequity or bad faith which would invalidate the equitable remedy of specific performance.

### *Conclusion*

Therefore, for the reasons set forth above, the motion for summary judgment is granted requiring the filing of a bond in accordance with the LOU.

Settle order on notice.

It is so ordered.

# APPENDIX A

## THE CHALOS LAW FIRM, LLC

### ATTORNEYS AT LAW
### AMERICANA HOUSE
### 10 AUDREY AVENUE
### OYSTER BAY, NEW YORK 11771
### (516) 922-5800

MICHAEL G. CHALOS
CHARLES S. CUMMING
OWEN F. DUFFY
ROBERT G. BABCOCK
GEORGE M. CHALOS

FAX (516) 922-8131
FAX (516) 922-8132
Email: admin@chaloslaw.com

October 7, 1999

Chiquita International Limited
And/or their Affiliated Companies
And/or The Interested Underwriters
As their Interests May Appear ("Claimants")
C/o Clark, Atcheson & Reisert
535 Fifth Avenue
New York, New York 10017

Re:   M/V BRETAGNE
      Discharge at Bremerhaven
      April 26, 1999

Gentlemen:

In consideration of your having refrained from causing the arrest of the M/V BRETAGNE, and your agreement to refrain from arresting or attaching any other vessel which is of the same or affiliated ownership or management, to assert *in rem* jurisdiction, and/or to obtain security . r any claim you have or may have for the alleged cargo damage, and your not attaching any other property or funds belonging to the owner, manager, charterers, or operator of the M/V BRETAGNE, arising out of the carriage and discharge of a cargo of palletized boxes of bananas at Bremerhaven on or about April 26, 1999, the undersigned Association hereby undertakes:

1. To file, or cause to be filed, upon your demand, an appearance, *in rem*, on behalf of the M/V BRETAGNE in any suit instituted before the United States District Court for the Southern District of New York, and to file or cause to be filed a claim by and on behalf of the owners of the said M/V BRETAGNE in such suit, irrespective of the vessel not being in the jurisdiction of the tribunal at the time and without raising any defense as to her absence from said jurisdiction, with the understanding that any such action will proceed as though the M/V BRETAGNE had been arrested pursuant to an *in rem* warrant of arrest and released upon the giving of this security.

2. In the event of a final decree, judgment or award (after appeal, if any) be entered in favor of the Claimants against the M/V BRETAGNE and/or owners in the aforementioned proceedings, then the undersigned Association agrees to pay and satisfy the said decree or any lesser amount decreed by said tribunal or settled between the parties with the Association's authority, without final decree being rendered, up to but not exceeding ONE MILLION TWO HUNDRED AND FIFTY THOUSAND UNITED STATES DOLLARS ($1,250,000.00) plus interests and costs.

3. Upon demand, to cause to be filed a bond in form and sufficiency of surety satisfactory to you or to the above tribunal in the above amount, securing your claim against said vessel in the aforementioned amount.

4. In the event the bond referred to in subdivision (3) above is filed, the undersigned Association shall have no further obligation under this letter, which shall thereafter be null and void.

5. The amount of this undertaking as set forth in subdivision (2) above may be reduced by the mutual agreement of the parties hereto, or by order of the United States District Judge upon application of the undersigned.

6. Notwithstanding the foregoing, in the event the Claimant obtains a final judgment for damages exceeding ONE MILLION TWO HUNDRED AND FIFTY THOUSAND UNITED STATES DOLLARS ($1,250,000.00), and the undersigned Association declines to agree to a corresponding amendment to this undertaking, Claimants may seek to arrest the M/V BRETAGNE, or to arrest, attach or otherwise restrain any asset under the ownership, associated ownership, control and/or management of the M/V BRETAGNE for said amount in excess of $1,250,000.00.

This letter is written entirely without prejudice to any rights or defenses which the said vessel or other defendants may have pursuant to the general maritime law, any applicable statutes and/or law of the forum, and/or applicable contracts, none of which is to be regarded as waived, but rather are specifically reserved.

It is understood and agreed that the execution of this letter by Owen F. Duffy shall not be construed as binding personally upon him, nor binding on The Chalos Law Firm,

LLC, but is to be binding only upon the Liverpool and London Steamship Protection and Indemnity Association Limited.

Very Truly Yours,

Liverpool and London Steamship Protection
And Indemnity Association Limited.