Michael F. ADAMS, individually and in his capacity as President of the Sheriff Officers Association, Inc. and "John Doe" and "Jane Doe" being persons in the Bargaining Unit represented by the Sheriff Officers Association, Inc. and whose names are too numerous to mention, Plaintiffs,

v.

Thomas SUOZZI, in his capacity as County Executive of the County of Nassau, Howard Weitzman, in his capacity as Comptroller of the County of Nassau and the County of Nassau, Defendants.

No. 03 CV 4363(ADS)(ARL).

United States District Court, E.D. New York.

Oct. 8, 2004.

Certilman Balin Adler & Hyman, LLP by Wayne J. Schaefer, Esq., Sebastian Alia, Esq., East Meadow, NY, for Plaintiffs.

Cullen & Dykman Bleakley Platt, LLP by Gerard Fishberg, Esq., Garden City, NY, for Defendants.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This case involves an action brought by Michael F. Adams on behalf of the Nassau County Sheriff Officers Association ("SHOA" or the "Plaintiffs") against the County of Nassau (the "County"), County Executive Thomas Suozzi, and Comptroller Howard Weitzman (collectively, the "Defendants"), seeking an injunction to prevent Nassau County from implementing a "lag payroll," namely, a deferral of salary with regard to the members of SHOA. Presently before the Court are motions by the Defendants, pursuant to the Federal Arbitration Act, to stay the court proceedings pending arbitration; to disqualify the Plaintiffs' counsel; or in the alternative, to dismiss this action.

## I. BACKGROUND

On December 29, 1999, the County enacted Resolution 574–1999 ratifying a memorandum of agreement between the County and several law enforcement employee organizations, including SHOA (collectively, the "Unions"). The memorandum of agreement ("Lag Payroll Agreement") detailed the ability of the County to institute a "lag payroll" during calendar year 2000. A "Lag payroll," if implemented, would allow the County to defer ten days of pay of each union member over the course of ten bi-weekly pay periods. The deferred pay would be returned when the union member separated from service with the County.

Although the Lag Payroll Agreement was signed by a SHOA representative, the agreement stated that it would be inoperative unless certain conditions were satisfied. First, it was subject to ratification by union members, within 45 days, according to SHOA's internal procedures. Second, it was subject to the execution of a further memorandum of agreement for the terms and conditions of an initial collective bargaining agreement between SHOA and Nassau County.

Both conditions failed to materialize as contemplated in the Lag Payroll Agreement. First, the Lag Payroll Agreement was never submitted to the members of SHOA for ratification. Second, the collective bargaining agreement was not executed until August 2001. Moreover, the collective bargaining agreement that was executed in August of 2001 ("Collective Bargaining Agreement") never mentions "lag payroll," deferral of pay, or the Lag Payroll Agreement.

On August 27, 2003, the County's Office of Labor Relations notified SHOA that it intended to implement the terms of the Lag Payroll Agreement with regard to members of SHOA beginning September 5, 2003. On September 4, 2003, the Plaintiffs filed an order to show cause in the Supreme Court of the State of New York

seeking to enjoin the Defendants from implementing the Lag Payroll Agreement. On September 5, 2003, the Defendants removed this action to federal court based on federal question jurisdiction.

On September 9, 2003 a hearing was held before United States District Judge Denis Hurley on the Plaintiffs' request for a temporary restraining order. Judge Hurley denied the application and set the matter down for a hearing on the preliminary injunction. On September 18, 2003, the case was reassigned to this Court and the Plaintiffs withdrew their request for a preliminary injunction in favor of proceeding to an adjudication on the merits. The Defendants now seek to stay the action, on the ground that the Lag Payroll Agreement requires this controversy to be decided by arbitration.

## II. DISCUSSION

### A. As to the Motion to Stay

■ The Federal Arbitration Act requires a court to "stay the trial of the action" until arbitration is held, when, in accordance with the terms of an agreement, the parties have agreed to arbitrate the dispute. 9 U.S.C. § 3 (2004). In enacting the Federal Arbitration Act, Congress created national substantive law governing all questions of the validity and enforceability of arbitration agreements. *See Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 845 (2d Cir.1987) (citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)). Therefore, this Court may properly exercise federal question jurisdiction over this dispute. *See Genesco*, 815 F.2d at 845.

■ In considering whether to stay an action in favor of arbitration, the Court must first decide whether the parties agreed to arbitrate. *See Chelsea Square*

*Textiles, Inc. v. Bombay Dyeing & Mfg. Co.*, 189 F.3d 289, 294 (2d Cir.1999). It is well settled that a court may not compel arbitration until it has resolved "the question of the very existence" of the contract embodying the arbitration clause. *Specht v. Netscape Communications Corp.*, 306 F.3d 17, 26 (2d Cir.2002) (quoting *Interocean Shipping Co. v. Nat'l Shipping & Trading Corp.*, 462 F.2d 673, 676 (2d Cir.1972)). If a party claims that no agreement at all exists, a trial is required on that issue before the court can direct the parties to arbitration. *Id.; see also AT & T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986) ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.") (citing *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960)). Unless the parties clearly provide otherwise, "the question of arbitrability—whether a[n] ... agreement creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination." *AT & T Techs., Inc.*, 475 U.S. at 649, 106 S.Ct. 1415; *accord Specht*, 306 F.3d 17, 26–27 (2d Cir.2002). The Plaintiffs in this case argue that no agreement exists because it was never ratified by the members of SHOA as required by the terms of the Lag Payroll Agreement.

■ In deciding whether parties agreed to arbitrate a certain matter, a court should apply state law to the issue of contract formation. *Id.*, 306 F.3d at 27; *Mehler v. Terminix Int'l Co.*, 205 F.3d 44, 48 (2d Cir.2000); *see also Perry v. Thomas*, 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 2527 n. 9, 96 L.Ed.2d 426 (1987) ("[S]tate law, whether of legislative or judicial origin, is applicable if that law

arose to govern issues concerning the validity, revocability, and enforceability of contracts generally."). Thus, the Court looks to New York state law regarding the issue of whether the parties entered into the Lag Payroll Agreement.

■ New York law requires contracts "be construed to effectuate the intent of the parties as derived from the plain meaning" of the agreement. *Andy Warhol Found. for the Visual Arts, Inc. v. Federal Ins. Co.*, 189 F.3d 208, 215 (2d Cir.1999). A review of the Lag Payroll Agreement reveals that its validity is conditioned on ratification by SHOA. The agreement states that "[t]his Memorandum shall be inoperative as to any union which fails to ratify within 45 days...." Lag Payroll Agreement at ¶ 9. Ratification is also contingent upon "the execution of a further Memorandum of Agreement for the terms and conditions of an initial County/SHOA Collective Bargaining Agreement." *Id.* Although a Collective Bargaining Agreement was executed by the parties in August 2001, it is undisputed that the members of SHOA never ratified the 1999 Lag Payroll Agreement.

The Defendants argue that the execution of the August 2001 Collective Bargaining Agreement, in and of itself, constituted ratification of the Lag Payroll Agreement. Alternatively, the Defendants argue that the failure of SHOA to present the Lag Payroll Agreement for ratification waived the provision requiring union approval.

■ Generally, parties may condition performance or the validity of a contract on the occurrence of an event. A condition precedent is "an act or event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises." *Oppenheimer & Co., Inc. v. Oppenheim, Appel, Dixon & Co.*, 86 N.Y.2d 685, 690, 636 N.Y.S.2d 734, 737, 660 N.E.2d 415

(1995) (citing Calamari & Perillo, Contracts § 11–2, at 438 [3d ed.] and Restatement [Second] of Contracts § 224). "However, not every condition in a contract is precedent to the existence of a valid, enforceable contract." *Catskill Dev. L.L.C. v. Park Place Entertainment Corp.*, 154 F.Supp.2d 696, 704 (S.D.N.Y.2001). The language of the contract must expressly condition the formation of an agreement on the performance of the condition. *Id.*

■ The Lag Payroll Agreement clearly conditions formation on two distinct events, namely, the ratification of the agreement by SHOA and the execution of a subsequent memorandum of agreement. Without one or the other, the agreement, by its own terms is "inoperative." The failure to present the agreement for ratification does not waive the condition. A party may waive performance of a condition inserted for its own benefit under an agreement. However, a party cannot create an obligation by waiver where no agreement previously existed. *See Nat'l Util. Service, Inc. v. Whirlpool Corp.*, 325 F.2d 779, 781 (2d Cir.1963) (explaining that "[o]ne cannot 'waive' himself into a duty to make a gift of money" (quoting Corbin on Contracts, Vol. 3A § 752 at 488)).

Assuming SHOA had ratified the agreement, the failure of the second condition would also render it inoperative. The Lag Payroll Agreement states that the County may institute a lag payroll in calendar year 2000, which had lapsed by the time the Collective Bargaining Agreement was executed in August 2001. Moreover, the Collective Bargaining Agreement neither incorporates the Lag Payroll Agreement by reference nor mentions deferral of salary.

It appears from the plain meaning of the contract that, by reason of the conditions precedent, no valid agreement was reached among the parties. The Court cannot or-

der a stay of the case pending arbitration if the Plaintiffs never intended to enter into an agreement to arbitrate in the first place. As such, the Court denies the motion of the Defendants to stay the action.

## B. As to the Disqualification of Plaintiffs' Attorney

██ The Defendants also seek to disqualify the Plaintiffs' attorney, Michael C. Axelrod, Esq., and his law firm, Certilman Balin Adler & Hyman, LLP, based on statements made by Mr. Axelrod during the September 9, 2003 hearing. At the hearing, Mr. Axelrod stated that he may be called as a fact witness in this matter due to his participation as a negotiator of the agreement. Under Disciplinary Rule 5–102 of the New York Rules of Professional Conduct, N.Y. Comp.Codes R. & Reg. tit. 22 § 1200.21 (2004), an attorney shall not act, or accept employment that contemplates the attorney's acting, as an advocate "on issues of fact" before any tribunal if the attorney knows or it is obvious that the attorney ought to be called as a witness on behalf of the client.

The Plaintiffs assert that Mr. Axelrod is not appearing as a litigator in this case, but rather, the advocacy role is being performed by his partner, Wayne Schaefer, Esq., and an associate. Under DR 5–102(a), "[A] law firm is permitted to continue representation of a client even though one of the firm's attorneys will be called as a witness on behalf of the client before a tribunal." *In re Owen & Mandolfo, Inc. v. Davidoff of Geneva*, 197 A.D.2d 370, 370, 602 N.Y.S.2d 369, 369 (1st Dep't 1993). At this time, the Defendants have not rebutted Plaintiffs' assertion that Mr. Axelrod will not appear as the litigator in this matter. Defendants may renew their request at a later date if it appears that Mr. Axelrod is serving as an advocate and will likely be called as a witness in this

case. Accordingly, the motion of the Defendants to disqualify Michael C. Axelrod or his law firm as counsel for the Plaintiffs is denied, without prejudice to renewal.

Finally, as to the alternative request of the Defendants to decide the case "via a dispositive motion on the basis of documentary evidence," (Letter from Defendant of 9/18/03, at 2, and 9/23/03, at 3), the Court is unclear as to what relief the Defendants seek under the Federal Rules of Civil Procedure. As such, that motion is denied.

## III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED**, that the motion by the Defendants to stay this action pending arbitration is **DENIED**; and it is further

**ORDERED**, the motion by the Defendants to disqualify counsel for the Plaintiffs is **DENIED** without prejudice, and it is further

**ORDERED**, that the motion by the Defendants for dismissal of the action is **DENIED**, and it is further

**ORDERED**, the parties are directed to contact United States Magistrate Judge Arlene R. Lindsay forthwith to schedule the completion of discovery.

**SO ORDERED.**