MEMORANDUM OPINION AND ORDER
 

 FRANCIS, United States Magistrate Judge.
 

 The question in this case is a novel one: does an insurer act in bad faith when it rejects a demand that would make its contribution to a settlement contingent upon the outcome of a subsequent declaratory judgment action in which the limits of
 
 *CDLXXIV
 
 liability under the relevant policy would be established? Although no case has decided this precise issue under New York law, the convergence of several well-established principles lead to the conclusion that an insurer can refuse such a demand without violating its good faith obligation to the insured.
 

 Background
 

 The plaintiffs in this action, Gail Green-idge and Geary Greenidge, own a three family home at 1883 Billingsly Terrace in the Bronx. In 1995, Ray Teachey brought an action on behalf of his daughter, Taniya Seay, against the Greenidges in New York State Supreme Court, Bronx, County.
 
 Seay v. Delano Village,
 
 Index No. 6012/95 (the
 
 Seay
 
 Action”). The Complaint alleged that Taniya suffered lead poisoning from exposure to lead paint while she resided with her mother and grandmother in the Greenidges’ property from October 1992 to April 1994.
 
 (Seay
 
 Complaint, attached as Exh. 1 to Notice of Motion by Plaintiff for Summary Judgment (“PI. Notice of Motion”), ¶¶ 34, 41). The plaintiffs in the
 
 Seay
 
 Action also brought claims against the owners and managing agents of the apartment where Taniya’s father lived, since she had often stayed with him during the same period.
 
 (Seay
 
 Complaint ¶¶ 4-18, 24-25).
 

 The Greenidges were insured pursuant to a homeowners’ policy issued by the Allstate Insurance Company (“Allstate”), the defendant in this action. The insurance consisted of a Standard Form policy issued on Allstate policy form AU2074. (Defendant’s Statement of Uncontested Facts Pursuant to Local Civil Rule 56.1 (“Def. Rule 56.1 Statement”), Exh. F (the “Insurance Policy”)). That policy had been in effect continuously since 1988, and its effective date was February 13 of each year. (Deposition of Gail Greenidge dated June 20, 2003 (“Greenidge Dep.”), attached as Exh. A to Def. Rule 56.1 Statement, at 26; Declaration Pages, attached as Exh. E to Def. Rule 56.1 Statement). Since Tani-ya’s exposure to lead paint allegedly spanned two policy periods, it was arguable that, for purposes of the policy limits, not one, but two, policies were triggered. The Insurance Policy provided up to $300,000 in indemnification for claims of bodily injury, defined as “physical harm to the body, including sickness or disease, and resulting death.... ” Insurance Policy at 3, 31; Declaration The relevant language of the Insurance Policy stated:
 

 Subject to the terms, limitations and conditions of this policy, Allstate will pay damages which an insured person becomes legally obligated to pay because of bodily injury ... arising from an accident and covered by this part of the policy.
 

 íj! i¡: :¡í :¡<
 
 %
 

 We are not obligated to pay any claim or judgment after we have exhausted our limit of liability.
 

 (Insurance Policy at 21). In addition, the Insurance Policy contained an “anti-staek-ing” provision:
 

 Regardless of the number of insured persons, injured persons, claims, claimants or policies involved, our total liability under the Family Liability Protection coverage for damages resulting from one accidental loss will not exceed the limits shown on the Declarations Page. All bodily injury and property damage resulting from one accidental loss or from continuous or repeated exposure to the same general conditions is considered the result of one accidental loss.
 

 (Insurance Policy at 27).
 

 When the Greenidges notified Allstate of the
 
 Seay
 
 Action, Allstate responded by assigning the firm of Minetti and Benedict to defend them. (Geary Dep. at 12-13).
 
 *CDLXXV
 
 Allstate further advised that the plaintiffs in the
 
 Seay
 
 Action were claiming damages beyond the policy limits, that the Green-idges could be personally liable for the excess, and that the Greenidges were entitled to retain separate counsel at their own expense, in addition to counsel appointed by the insurer. (Letter dated Feb. 22, 1995, attached as Exh. B to Def. Rule 56.1 Statement).
 

 Beginning in 1998, Theresa Sturges, a senior claim representative for Allstate, was responsible for handling the claim against the Greenidges. (Deposition of Theresa Sturges dated June 80, 2003 (“Sturges Dep.”), attached as Exh. D to Def. Rule 56.1 Statement, at 4-5). In February 1998, counsel appointed by Allstate to defend the Greenidges advised Ms. Sturges that the case would soon be assigned for trial. (Sturges Dep. at 16). They further reported that counsel for the plaintiffs in the
 
 Seay
 
 Action, Sanders, Sanders, Block & Woycik, had made a settlement demand: $700,000, of which $300,000 was to be paid by Allstate on behalf of the Greenidges, and $400,000 was to come from the codefendants. (Sturges Dep. at 13, 16-17). Apparently no further progress was made toward settlement at that time.
 

 On August 20,1999, Ms. Sturges learned that a trial date had been set and that the plaintiffs’ demand was still $700,000. (Sturges Dep. at 17, 19). On October 5, 1999, counsel conferred in New York State Supreme Court, and the presiding justice sought a settlement offer from Allstate on behalf of the Greenidges. (Sturges Dep. at 23). Ms. Sturges advised counsel that they had authority to offer $300,000. (Sturges Dep. at 23). This offer was conveyed to counsel for the plaintiffs, and further negotiations were adjourned. (Sturges Dep. at 23).
 

 On October 14, 1999, Ms. Sturges was advised that counsel for the plaintiffs would not discuss settlement unless Allstate agreed that the policy limit was $600,000: $300,000 for each of two policy periods. (Sturges Dep. at 23-24). In the alternative, plaintiffs’ counsel proposed a settlement between $300,000 and $600,000, with $300,000 to be paid immediately and the balance contingent upon the outcome of a declaratory judgment action that Allstate would agree to litigate to resolve the issue of whether the policy limits for one policy period or two applied. (Sturges Dep. at 23-24). On behalf of Allstate, Ms. Sturges rejected this demand. (Sturges Dep. at 24). At the same time, she referred the question of the relationship between the policy limit and the anti-stacking provision in the policy to three sets of outside counsel for their review. (Sturges Dep. at 25).
 

 Shortly thereafter, the co-defendants settled for $150,000. (Claim Diary, attached as Exh. G to Def. Rule 56.1 Statement, at 33). In a letter dated October 21, 1999, counsel for the plaintiffs stated that unless Allstate tendered $600,000, there would be no settlement and a bad faith action would be commenced by the plaintiffs against Allstate. (Def. Rule 56.1 Statement, Exh. H). Ms. Sturges forwarded this letter to the attorneys who were in the process of reviewing Allstate’s interpretation of the policy.
 

 Over the following week, Allstate received opinions from outside counsel. Dennis O’Connor of the firm of O’Connor, McGuinness, Conte, Doyle & Oleson submitted a letter on October 25, 1999, suggesting that there was no proof that Tani-ya had been exposed to lead paint during the first policy period and that, therefore, only the second policy had been triggered. Mr. O’Connor did not, however, address the anti-stacking provisions of the policies. (Def. Rule 56.1 Statement, Exh. I).
 

 
 *CDLXXVI
 
 On October 29, 1999, Alan C. Eagle, a partner with the firm of Rivkin, Radler & Kremer, submitted an opinion letter that explicitly dealt with the anti-stacking language. Mr. Eagle acknowledged that “[o]ur research has not revealed any cases applying the Allstate limits of liability provision to a claim involving successive policy periods.” (Def. Rule 56.1 Statement, Exh. J at 4). However, Mr. Eagle reviewed closely related caselaw and found:
 

 There is New York authority applying a “non-cumulation” clause to restrict an insurer’s liability to one limit of liability under successive policies. While the insureds could argue that the “non-cumu-lation” clause more specifically addresses the question of stacking policies from multiple policy periods than the Allstate language and that Allstate could have employed such a clause if it deemed appropriate, Allstate could argue that the Allstate provision has the same effect.
 

 (Def. Rule 56.1 Statement, Exh. J at 5). He ultimately reached the following conclusion:
 

 In the absence of decisions directly on point, we look to analogous cases and resort to interpretation of the plain language of the limits of liability provision contained in the Allstate insurance policy. While we must anticipate that plaintiff and/or the insureds may raise a number of arguments that the limits of liability clause does not prevent the “stacking” of limits, thereby making any result less than certain, we conclude that there may be a better than 50% chance that a court would interpret the Allstate policy to provide that only one limit is available for the claim and the policy limits may not be “stacked.”
 

 (Def. Rule 56.1 Statement, Exh. J at 7).
 

 In an opinion letter dated November 2, 1999, Gregory S. Katz of the firm of Wilson, Elser, Moskowitz, Edelman & Dicker LLP also reviewed the anti-stacking provisions. Mr. Katz analyzed the policies as follows:
 

 In essence, we would read Allstate’s policy provision to limit a claimant who suffered bodily injury as the result of a continuous exposure to lead paint to be entitled to the proceeds of a single policy. The policy states that “regardless of the number of ... policies involved” the “total liability ... for damages resulting from one accidental loss will not exceed the [policy limits].” The policy then defines injuries caused by continuous exposure, such as exposure to lead paint, as “one accidental loss.” By extension, coverage for one accidental loss is limited to a single policy, notwithstanding that the lead poisoning injury may continue into a second policy period.
 

 (Def. Rule 56.1 Statement, Exh. K at 4). Mr. Katz also reviewed cases that counsel for the plaintiffs had cited and found them distinguishable because, although they held that successive policies might be triggered by injury resulting from continuous exposure to a toxic agent, none of those cases dealt with anti-stacking provisions. (Def. Rule 56.1 Statement, Exh. K at 5). Accordingly, Mr. Katz concluded that “[i]t is our opinion that the policy provision clearly states that only one policy will apply when a child is injured as a result from continuous or repeated exposure to the same general conditions.” (Def. Rule 56.1 Statement, Exh. K at 2).
 

 Meanwhile, trial of the
 
 Seay
 
 Action had begun on October 25, 1999 before Justice Janice Bowman. At the end of the trial day on November 3, Martin Block, counsel for the plaintiffs, placed on the record his intent to initiate a bad faith proceeding if Allstate did not agree to settle on the basis
 
 *CDLXXVII
 
 of the policy limits as would be determined in a subsequent declaratory judgment action. (Def. Rule 56.1 Statement, Exh. M at 314-15). Counsel for the Greenidges noted that Allstate had offered $300,000 and indicated that he would transmit the bad faith statement to the insurer. (Def. Rule 56.1 Statement, Exh. M at 315-16). Justice Bowman commented, “[m]y concern is suppose there’s judgment for a million dollars.” (Def. Rule 56.1 Statement, Exh. M at 316). Mr. Block responded that if Allstate agreed to the declaratory judgment action, the plaintiff would not seek to recover anything over the $600,000 from the Greenidges. (Def. Rule 56.1 Statement, Exh. M at 316).
 

 The following day, Hugh Campbell appeared as personal counsel for the Green-idges and urged Allstate to negotiate in good faith, while recognizing that it was within the insurer’s discretion to settle within the policy limits. (Def. Rule 56.1 Statement, Exh. M at 385-87). That night, Mr. Campbell sent a letter to Ms. Sturges repeating the plaintiffs’ offer to settle on a contingent basis and strongly urging Allstate to consider that proposal. (Def. Rule 56.1 Statement, Exh. N). The next day, Ms. Sturges responded:
 

 The full limit of our policy coverage was offered in settlement of this case, prior to the onset of trial. It is the position of the plaintiff that a second policy exists. This is where we disagree. A full disclosure was made in a timely fashion of all applicable policies, including a signed excess affidavit by your client/our insured. It has been and always will be a prerogative of the plaintiff to pursue a declaratory judgment in this issue. No agreement on our part is necessary.
 

 (Def. Rule 56.1 Statement, Exh. O). She also sent a letter to plaintiffs’ counsel reiterating that Allstate’s offer of $300,000 was still available. (Def. Rule 56.1 Statement, Exh. P). No settlement was reached.
 

 On November 5, 1999, the jury returned a verdict in favor of Taniya Seay in the amount of $2,000,000, and on July 7, 2000, judgment was entered against the Green-idges for $1,643,000.00. The Greenidges appealed, and the judgment was affirmed on March 5, 2002.
 
 Seay v. Greenidge,
 
 292 A.D.2d 173, 738 N.Y.S.2d 199 (1st Dep’t 2002).
 

 Thereafter, the Greenidges instituted the instant bad faith action in New York State Supreme Court, Bronx County, and Allstate removed it to this Court based on diversity jurisdiction. The parties then consented to proceed before me for all purposes pursuant to 28 U.S.C. § 636(c). Following completion of discovery, Allstate moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, and the Greenidges opposed Allstate’s motion and cross-moved for summary judgment in their favor.
 

 Discussion
 

 A.
 
 Summary Judgment Standard
 

 Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate where “the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.” Fed.R.Civ.P. 56(c);
 
 see also Andy Warhol Foundation for the Visual Arts, Inc. v. Federal Insurance Co.,
 
 189 F.3d 208, 214 (2d Cir.1999);
 
 Tomka v. Seiler Corp.,
 
 66 F.3d 1295, 1304 (2d Cir.1995). The moving party bears the initial burden of demonstrating “the absence of a genuine issue of material fact.”
 
 Celotex Corp. v. Catrett,
 
 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the moving party meets that bur
 
 *CDLXXVIII
 
 den, the opposing party must come forward with “specific facts showing that there is a genuine issue for trial,” Fed. R.Civ.P. 56(e), by “a showing sufficient to establish the existence of [every] element essential to that party’s case, and on which that party will bear the burden of proof at trial.”
 
 Celotex,
 
 477 U.S. at 322, 106 S.Ct. 2548.
 

 In assessing the record to determine whether there is a genuine issue of material fact, the court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party.
 
 Anderson v. Liberty Lobby, Inc.,
 
 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986);
 
 Vann v. City of New York,
 
 72 F.3d 1040, 1048-49 (2d Cir.1995). But the court must inquire whether “there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party,”
 
 Anderson,
 
 477 U.S. at 249, 106 S.Ct. 2505 (citation omitted), and grant summary judgment where the nonmovant’s evidence is conclu-sory, speculative, or not significantly probative.
 
 Id.
 
 at 249-50, 106 S.Ct. 2505. “The litigant opposing summary judgment may not rest upon mere conclusory allegations or denials, but must bring forward some affirmative indication that his version of relevant events is not fanciful.”
 
 Podell v. Citicorp Diners Club, Inc.,
 
 112 F.3d 98, 101 (2d Cir.1997) (internal quotations and citations omitted);
 
 see also Matsushita Electric Industrial Co. v. Zenith Radio Corp.,
 
 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (a nonmoving party “must do more than simply show that there is some metaphysical doubt as to the material facts”);
 
 Goenaga v. March of Dimes Birth Defects Foundation,
 
 51 F.3d 14, 18 (2d Cir.1995) (nonmovant “may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible”). In sum, if the court determines that “the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no ‘genuine issue for trial.’ ”
 
 Matsushita,
 
 475 U.S. at 587, 106 S.Ct. 1348 (quoting
 
 First National Bank of Arizona v. Cities Service Co.,
 
 391 U.S. 253, 288, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).
 

 B.
 
 Disclaimer
 

 The Greenidges have raised a threshold question: they contend that Allstate is barred from arguing that only a single policy limit applies because it failed to issue a timely disclaimer with respect to the second policy. This argument is itself untimely, and, even if it were not, it is without merit.
 

 1.
 
 Timeliness
 

 Under the Federal Rules of Civil Procedure, the purpose of a complaint is to provide the defendant with notice of the claims asserted against it. “[A]t the very least, plaintiff must set forth facts that will allow each party to tailor its discovery to prepare an appropriate defense.”
 
 Beckman v. United States Postal Service,
 
 79 F.Supp.2d 394, 407 (S.D.N.Y.2000). In this case, the Greenidges’ Complaint grounds their bad faith claim exclusively on Allstate’s refusal to offer $600,000 in settlement of the
 
 Seay
 
 Action, or at least to agree to pay that amount contingent upon the outcome of a declaratory judgment action. Nowhere does the Complaint suggest that their claim is in any way predicated on Allstate’s failure to disclaim. To be sure, counsel for the plaintiffs in the
 
 Seay
 
 Action argued in his bad faith letter dated October 21, 1999, that Allstate had not made a timely disclaimer. (Def. Rule 56.1 Statement, Exh. H at 4). But that aspect of the letter was never referenced in the pleadings in this action.
 

 A party cannot assert a cause of action for the first time in response to a
 
 *CDLXXIX
 
 summary judgment motion. Because a claim so raised deprives the adversary of the opportunity for discovery and presumptively creates prejudice, it must be disregarded.
 
 See Khan v. Abercrombie & Fitch, Inc.,
 
 No. 01 Civ. 6163, 2003 WL 22149527, at *10 (S.D.N.Y. Sept. 17, 2003);
 
 Porter v. New York University School of Law,
 
 No. 99 Civ. 4693, 2003 WL 22004841, at *12 (S.D.N.Y Aug. 25, 2003);
 
 Beckman,
 
 79 F.Supp.2d at 407-08;
 
 Bonnie & Co. Fashions, Inc. v. Bankers Trust Co.,
 
 170 F.R.D. 111, 119 (S.D.N.Y.1997). Accordingly, the Greenidges may not now rely on Allstate’s failure to disclaim.
 

 2.
 
 Merits
 

 In any event, the contention that Allstate was obligated to disclaim fails on the merits. The Greenidges’ argument is derived from New York Insurance Law § 3420(d) which provides:
 

 If under a liability policy delivered or issued for delivery in this state, an insurer shall disclaim liability or deny coverage for death or bodily injury arising out of a motor vehicle accident or any other type of accident occurring within this state, it shall give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant.
 

 However, in the first instance, Allstate does not appear to be “disclaiming” coverage at all. It acknowledges that Taniya Seay may have been exposed over two policy periods and that each policy was triggered. Allstate’s position, at least at this point in time, is that even if the injury is covered by multiple policies, only a single limitation of liability' applies pursuant to the anti-stacking provision.
 
 [1]
 

 This distinguishes the instant case from
 
 Reliance Insurance Cos. v. Daly,
 
 67 Misc.2d 23, 322 N.Y.S.2d 881 (1971),
 
 aff'd as modified,
 
 38 A.D.2d 715, 329 N.Y.S.2d 504 (2d Dep’t 1972). In
 
 Reliance,
 
 the automobile policy at issue provided liability insurance of up to $300,000 for injury to one victim or $500,000 for multiple victims. 38 A.D.2d at 715-16, 329 N.Y.S.2d at 505. After the insured was involved in an accident in which a passenger was killed, the insurer discovered that the insured had fraudulently obtained the policy, and the insurer therefore sought to reduce the policy limits to the legally mandated míni-mums of $10,000 and $20,000.
 
 Id.
 
 at 716, 329 N.Y.S.2d at 505-06. The trial court held that under these circumstances, the insurer was effectively denying coverage and was obligated to issue a timely disclaimer under the precessor statute to Insurance Law § 3420(d). The court reasoned:
 

 While “Coverage” as used in the policy refers to the nature of the risk insured against and is distinct from the “Limits of Liability,” the extent of an insurer’s liability is a function of both. Since plaintiff does not deny bodily injury liability, it can properly argue that it has not denied coverage, but in disclaiming any obligation to pay more than $10,000 it is in a very real sense ($290,000 worth) disclaiming liability. Put another way, the statute does not require the disclaimer of All liability; an insurer which disclaims any part of the liability for which it contracted comes within the statute and must give the required notice.
 

 Reliance,
 
 67 Misc.2d at 25, 322 N.Y.S.2d at 884 (citations omitted). The instant case differs in the critical respect that Allstate never sought to rescind or reform the poli
 
 *CDLXXX
 
 cies at issue; it simply advanced its interpretation of the limits of liability. Under those circumstances, it was not required to disclaim.
 

 Moreover, even if an insurer’s narrow reading of its liability limits could be considered a “disclaimer,” Allstate had no obligation to disclaim here.
 

 Disclaimer pursuant to section 3420(d) is unnecessary when a claim falls outside the scope of the policy’s coverage portion. Under those circumstances, the insurance policy does not contemplate coverage in the first instance, and requiring payment of a claim upon failure to timely disclaim would create coverage where it never existed. By contrast, disclaimer pursuant to section 3420(d) is necessary when denial of coverage is based on a policy exclusion without which the claim would be covered.
 

 Worcester Insurance Co. v. Bettenhauser,
 
 95 N.Y.2d 185, 188-89, 712 N.Y.S.2d 433, 435, 734 N.E.2d 745 (2000).
 
 See also Crespo v. City of New York,
 
 303 A.D.2d 166, 167, 756 N.Y.S.2d 183, 185 (1st Dep’t 2003);
 
 Iafallo v. Nationwide Mutual Fire Insurance Co.,
 
 299 A.D.2d 925, 927, 750 N.Y.S.2d 386, 388 (4th Dep’t 2002).
 

 As the New York Court of Appeals has observed, “drawing the line between a lack of coverage in the first instance (requiring no disclaimer) and a lack of coverage based on an exclusion (requiring timely disclaimer) has at times proved problematic.”
 
 Bettenhauser,
 
 95 N.Y.2d at 189, 712 N.Y.S.2d at 435, 734 N.E.2d 745. This case, however, clearly falls on the side of the line where no disclaimer is required. That is because
 

 [w]here ... an insurer has paid the full monetary limits set forth in the policy, its duties under the contract of insurance cease. The defendant’s tardiness in issuing its denial of claim could not thereafter create a new policy or additional coverage in excess of the amount contracted for.
 

 Presbyterian Hospital in the City of New York v. Liberty Mutual Insurance Co.,
 
 216 A.D.2d 448, 448, 628 N.Y.S.2d 396, 397 (2d Dep’t 1995) (citations omitted);
 
 see also Presbyterian Hospital in the City of New York v. General Accident Insurance Co. of America,
 
 229 A.D.2d 479, 480, 645 N.Y.S.2d 516, 517 (2d Dep’t 1996). As will be discussed below, Allstate did, indeed, offer in settlement the full limits of its policies. And, as demonstrated by
 
 Waskiewicz v. New York Central Mutual Fire Insurance Co.,
 
 252 A.D.2d 944, 675 N.Y.S.2d 733 (4th Dep’t 1998), the fact that determining the applicable limits required looking beyond the limitation of liability section is of no moment. In
 
 Waskiewicz
 
 the court held that where a policy’s limits were exhausted after application of an offset provision, no disclaimer was required.
 
 Id.,
 
 675 N.Y.S.2d at 734. Similarly, in this case where Allstate’s policy limits were exhausted after application of the anti-stacking provision, no disclaimer was required.
 

 Therefore, Allstate’s failure to issue a timely disclaimer, even if properly raised at this point, does not preclude it from defending this bad faith action.
 

 C.
 
 Bad Faith
 

 It is well settled under New York law that an insurer may be held liable for the breach of its duty of good faith in defending and settling claims against its insured.
 
 See New England Insurance Co. v. Healthcare Underwriters Mutual Insurance Co.,
 
 295 F.3d 232, 240-41 (2d Cir.2002);
 
 Pavia v. State Farm Mutual Automobile Insurance Co.,
 
 82 N.Y.2d 445, 452, 605 N.Y.S.2d 208, 210, 626 N.E.2d 24 (1993). “[WJherever an insurer is presented with a settlement offer within policy limits a conflict arises between, on
 
 *CDLXXXI
 
 the one hand, the insurer’s interest in minimizing its payments and on the other hand, the insured’s interest in avoiding liability beyond the policy limits.”
 
 Pavia,
 
 82 N.Y.2d at 452, 605 N.Y.S.2d at 211, 626 N.E.2d 24. Accordingly, “[b]y refusing to settle within the policy limits, an insurer risks being charged with bad faith on the premise that it has advanced its own interests by compromising those of its insured[.]”
 
 Id.,
 
 605 N.Y.S.2d at 211, 626 N.E.2d 24 (internal quotation marks and citation omitted). To prevail, then, an insured must show “more than ordinary negligence and less than a showing of dishonest motives” on the part of the insurer.
 
 Id.
 
 at 454, 605 N.Y.S.2d at 212, 626 N.E.2d 24. The insured “must establish that the insurer’s conduct constituted a ‘gross disregard’ of the insured’s interests — that is, a deliberate or reckless failure to place on equal footing the interests of its insured with its own interests when considering a settlement offer.”
 
 Id.
 
 at 453, 605 N.Y.S.2d at 211, 626 N.E.2d 24.
 

 Bad faith, however, is not a free-floating concept to be invoked whenever the insurer fails to maximize the interests of the insured. Rather, “[t]he duty of ‘good faith’ settlement is an implied obligation derived from the insurance contract.”
 
 Id.
 
 at 452, 605 N.Y.S.2d at 211, 626 N.E.2d 24.
 
 See also Gordon v. Nationwide Mutual Insurance Co.,
 
 30 N.Y.2d 427, 437, 334 N.Y.S.2d 601, 609, 285 N.E.2d 849 (1972) (“bad faith requires an extraordinary showing of a disingenuous or dishonest failure to carry out a contract”). Thus, bad faith cannot be imputed to an insurer who declines to perform an act that does not arise from the policy itself.
 
 See Combustion Engineering, Inc. v. Imetal,
 
 235 F.Supp.2d 265, 270 (S.D.N.Y.2002);
 
 cf. Granite Partners, L.P. v. Bear, Stearns & Co.,
 
 17 F.Supp.2d 275, 306 (S.D.N.Y.1998) (general contract principle that implied duty of good faith “cannot be used to create independent obligations beyond those agreed upon and stated in the express language of the contract”);
 
 Warner Theatre Associates L.P. v. Metropolitan Life Insurance Co.,
 
 No. 97 Civ. 4914, 1997 WL 685334, at *6 (S.D.N.Y. Nov. 4, 1997) (same).
 

 In conducting settlement negotiations on behalf of an insured, an insurer engages in two different analyses, each of which is subject to the test of good faith. First, the insurer must evaluate the insured’s exposure as tortfeasor: the probability that the insured will be found liable and the likely magnitude of a damage award.
 
 See Pavia,
 
 82 N.Y.2d at 454, 605 N.Y.S.2d at 212, 626 N.E.2d 24. Second, the insurer also has to evaluate coverage issues, since the failure to offer to settle a claim based on a wrongful disclaimer could constitute bad faith.
 
 Cf. Gordon,
 
 30 N.Y.2d at 437, 334 N.Y.S.2d at 609, 285 N.E.2d 849 (insurer found not to have acted in bad faith when it withdrew from defense of insured on erroneous but not unreasonable belief that policy had been cancelled).
 

 With respect to the first of these prongs, the principle that a finding of bad faith must be related to the breach of contractual obligations means that once an insurer has offered its policy limits, it is immune from a claim of bad faith for not agreeing to settle for any higher amount.
 
 See Nachbaur v. American Transit Insurance Co.,
 
 300 A.D.2d 74, 74, 752 N.Y.S.2d 605, 606 (1st Dep’t 2002). Thus, in a case where a liability policy has limits of $100,000, and the plaintiff in the underlying tort action demands $100,001, an insurer that offers the full policy limit but refuses to pay a dollar more can not be held to have acted in bad faith.
 

 Similarly, in fulfilling its obligation to evaluate coverage, an insurer is not
 
 *CDLXXXII
 
 required to engage in extra-contractual conduct. In this case, the policy did not require Allstate to assent to a declaratory judgment action to determine the policy limits, and it therefore breached no good faith obligation by declining to do so. Even if the “contingent” settlement proposed by the plaintiffs in the
 
 Seay
 
 Action were costless to Allstate, it was not required to accede to the demand. And, the proposal was not costless. Allstate would have been put to the expense of litigating the declaratory judgment proceeding and, by “agreeing” to that procedure, would have waived the opportunity to seek an award of costs and attorneys’ fees on the grounds that the position of the insureds in the litigation was frivolous. To hold that a tort plaintiffs attorney can assert bad faith merely because an insurer declines to offer policy limits as determined by some future proceeding — regardless of the objective merit of the insurer’s interpretation of the policy — -would tilt the playing field and give the tort plaintiff unwarranted leverage in settlement negotiations.
 

 Nevertheless, the Greenidges could still have a viable claim here if Allstate declined the settlement proposal based on unreasonable construction of the policy. But that is not the case. First, even if Allstate’s interpretation were mistaken, it is far from unreasonable, as demonstrated by the fact that Allstate obtained opinion letters from two separate sets of outside counsel that confirmed its reading of the policies. Second, the plain language of the anti-stacking provision admits of only one construction. The policies provide that injury “from continuous or repeated exposure to the same general conditions is considered the result of one accidental loss.” (Insurance Policy at 27). Taniya Seay’s exposure to lead paint while residing on the Greenidges’s property was thus one accidental loss. Furthermore, “total liability ... for damages resulting from one accidental loss will not exceed [$300,-000],” “[r]egardless of the number of ... policies involved[.]” (Insurance Policy at 27). Therefore, it is clear that even though two policies may have been triggered, the policy limit remained $300,000. Allstate’s interpretation of the policies was not only reasonable, it was correct; Allstate offered the policy limits in settlement; and, consequently, it did not act in bad faith.
 

 Conclusion
 

 As discussed above, the Greenidges’ claim of untimely disclaimer comes too late, and, in any event, Allstate was not required to disclaim. The Greenidges’ claim of bad faith fails because Allstate offered the policy limits and was not obligated to accept a resolution of the
 
 Seay
 
 Action that would have been contingent on the outcome of a subsequent declaratory judgment proceeding. Therefore, Allstate’s motion for summary judgment is granted, the Greenidges’ cross-motion is denied, and the Clerk of Court is directed to enter judgment dismissing the Complaint.
 

 SO ORDERED.
 

 [1]
 

 . Allstate’s letters declining to offer more than $300,000 were more ambiguous and could be read to rely on other arguments as well. (Def. Rule 56.1 Statement, Exhs. O, P).