**Gail GREENIDGE and Geary Greenidge, Plaintiffs–Appellants,**

v.

**ALLSTATE INSURANCE COMPANY, Defendant–Appellee.**

**Docktet No. 04–1515 CV.**

United States Court of Appeals, Second Circuit.

Argued: Jan. 23, 2006.

Decided: April 25, 2006.

Bertram Herman, Bertram Herman, P.C. (Austen O. Ugweches, of counsel), Mount Kisco, New York, for plaintiffs-appellants.

Barry I. Levy, Shapiro, Beilly, Rosenberg, Aronowitz, Levy & Fox, LLP (Beth Shapiro, Elan R. Kandel, of counsel), New York, New York, for defendant-appellee.

Before: WALKER, Chief Judge, WINTER, and SOTOMAYOR, Circuit Judges.

SOTOMAYOR, Circuit Judge.

Plaintiffs-appellants Gail Greenidge and Geary Greenidge ("the Greenidges") appeal from a judgment of the United States District Court for the Southern District of New York (James C. Francis, IV, M.J.) granting defendant-appellee Allstate Insurance Company's ("Allstate") motion for summary judgment in a suit alleging that the insurer breached its duty of good faith when it rejected a settlement offer that required it to consent to a declaratory judgment action brought by an injured third-party claimant that would establish the limits of its liability under the Greenidges' insurance policy. The court denied the Greenidges' cross-motion for summary judgment and dismissed their complaint. For the reasons stated in this opinion, we affirm the judgment of the district court.

## BACKGROUND

The Greenidges own a three-family home at 1883 Billingsley Terrace in the Bronx. In 1995, Ray Teachey brought an action on behalf of his infant daughter, Taniya Seay, against the Greenidges in New York State Supreme Court, Bronx County. *See Seay v. Delano Village*, Index No. 6012/95 ("the Seay Action"). The complaint alleged that the infant suffered severe lead poisoning from exposure to lead paint while she resided at the Green-idges' property between October 1992 and April 1994. The Seay plaintiffs also brought claims against the owners and managing agents ("the co-defendants") of the apartment where Teachey lived, as the infant had visited his apartment throughout this period.

The Greenidges were insured pursuant to a homeowners' policy ("the Policy") issued by Allstate that had been in effect continuously since 1988. The relevant portion of the Policy stated that "[s]ubject to the terms, limitations and conditions of this policy, Allstate will pay damages which an insured person becomes legally obligated to pay because of bodily injury . . . arising from an accident and covered by this part of the policy." The Policy provided up to $300,000 in indemnification for claims of bodily injury and specified that Allstate was not obligated to pay any claim or judgment after it had exhausted its limit of liability.

Because the Policy's effective date was February 13th of each year, the parties agree that Seay's exposure to lead paint at the Greenidges' property spanned two policy periods. The Policy, however, contained an "anti-stacking" provision stating:

> Regardless of the number of insured persons, injured persons, claims, claimants or policies involved, our total liability under the Family Liability Protection coverage for damages resulting from one accidental loss will not exceed the limits shown on the Declarations Page. All bodily injury and property damage resulting from one accidental loss or from continuous or repeated exposure to the same general conditions is considered the result of one accidental loss.

The parties in the Seay Action disagreed about the effect of this anti-stacking provision on the Policy's $300,000 limit of liabili-

ty. Allstate argued that the anti-stacking provision limited its liability to $300,000 because Seay's injuries resulted from "continuous or repeated exposure to the same general conditions" and therefore constituted "one accidental loss." The Seay plaintiffs argued that Seay's injuries occurred over two policy periods and thus implicated two policy limits, increasing Allstate's liability to $600,000.

Allstate appointed the law firm of Minetti and Benedict to represent the Greenidges in the Seay Action. The insurer also informed the Greenidges by letter that the plaintiffs in the Seay Action were claiming damages beyond the limits of their Policy, that the Greenidges would be personally liable for any judgment in excess of those limits, and that the Greenidges were entitled to retain separate counsel at their own expense in addition to counsel appointed by Allstate.

In 1998, Theresa Sturges, a senior claim representative for Allstate, assumed responsibility for handling the claim against the Greenidges. In February of that year, counsel appointed by Allstate to defend the Greenidges advised Sturges that the case would soon be assigned for trial and that the Seay plaintiffs had offered to settle the case for $700,000, of which $300,000 was to be paid by Allstate on the Greenidges' behalf and $400,000 was to come from the co-defendants. No further progress toward settlement was made at that time.

On August 20, 1999, Sturges learned that a trial date had been set. On October 5, 1999, counsel for the parties met in New York State Supreme Court and the presiding justice sought a settlement offer from Allstate. Allstate offered to settle for $300,000, its maximum liability under one policy limit. On October 14th, the Seay plaintiffs advised Allstate that they would not discuss settlement unless the insurer

conceded that the applicable policy limit was $600,000, or $300,000 for each of the policies at issue. In the alternative, the Seay plaintiffs proposed a settlement between $300,000 and $600,000, with $300,000 to be paid immediately and the balance contingent upon the outcome of a declaratory judgment action that would determine whether one or two policy limits were triggered. Allstate rejected this proposal and referred the question of how many policy limits were triggered by Seay's injuries to three sets of outside counsel.

Shortly thereafter, the co-defendants settled for $150,000. In a letter dated October 21, 1999, counsel for the Seay plaintiffs stated that unless Allstate tendered $600,000, there would be no settlement and the insurer's refusal to tender this amount would be the basis of a bad faith action. Sturges forwarded this letter to the outside counsel who were in the process of reviewing Allstate's interpretation of the Policy. Within a week, Allstate received legal opinions from the three sets of outside counsel. Dennis O'Connor of the firm of O'Connor, McGuinness, Conte, Doyle & Oleson submitted a letter on October 25th suggesting that there was no proof that Seay had been exposed to lead during the first policy period and that Allstate could therefore argue that only one policy limit had been triggered. O'Connor did not address the anti-stacking provision. On October 29th, Alan C. Eagle, a partner at Rivkin, Radler & Kremer, submitted a letter concluding that, although the law was not entirely clear, "there may be a better than 50% chance that a court would interpret the Allstate policy to provide that only one limit is available for the claim and the policy limits may not be 'stacked.'" Finally, in a letter dated November 2nd, Gregory S. Katz of the firm of Wilson, Elser, Moskowitz, Edelman & Dicker LLP stated that his

firm "would read Allstate's policy provision to limit a claimant who suffered bodily injury as the result of a continuous exposure to lead paint to be entitled to the proceeds of a single policy" because the Policy "defines injuries caused by continuous exposure, such as exposure to lead paint, as 'one accidental loss.' "

The trial of the Seay Action began on October 25, 1999, before Justice Janice Bowman. On November 3rd, counsel for the Seay plaintiffs indicated his intent to initiate a bad faith proceeding against Allstate if the insurer did not agree to settle this case for the limit of liability under the Greenidges' Policy—either $300,000 or $600,000—to be determined in a subsequent declaratory judgment action. Counsel for the Greenidges noted that Allstate had offered the plaintiffs $300,000 but that the insurer refused to enter into a settlement dependant on the outcome of a declaratory judgment action brought by the Seay plaintiffs. Justice Bowman expressed concern over the Greenidges' financial exposure in the absence of a settlement and noted that they could face "a judgment for a million dollars." Counsel for the Seay plaintiffs responded that if Allstate agreed to the declaratory judgment action, his clients would seek to recover no more than $600,000 from the Greenidges.

On November 4, 1999, attorney Hugh Campbell appeared in court as personal counsel for the Greenidges and urged Allstate to agree to a settlement that would limit his clients' financial exposure. That night, Campbell sent a letter to Sturges repeating the Seay plaintiffs' offer to settle on a contingent basis and urging Allstate to accept that offer. The following day, Sturges responded with a letter reiterating Allstate's belief that Seay's injuries implicated only one policy limit and informing Campbell that Allstate would not consent to the settlement proposed by the plaintiffs. Sturges also sent a letter to the Seay plaintiffs, informing them that Allstate's offer to settle for $300,000 remained open. The parties did not reach a settlement.

On November 5, 1999, the jury returned a verdict in favor of Taniya Seay in the amount of $2,000,000, and on July 7, 2000, judgment was entered against the Greenidges in the amount of $1,643,000.00. The Greenidges appealed, and the judgment was affirmed on March 5, 2002. *See Seay v. Greenidge*, 292 A.D.2d 173, 738 N.Y.S.2d 199 (2002). Shortly thereafter, the Greenidges instituted the instant bad faith action in New York State Supreme Court, Bronx County. Allstate removed the suit to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §§ 1332 and 1441. The parties then agreed to proceed before Magistrate Judge James C. Francis, IV for all purposes pursuant to 28 U.S.C. § 636(c).[1] Following the completion of discovery, Allstate moved for summary judgment, as did the Greenidges. The magistrate judge granted Allstate's motion, denied the Greenidges' cross-motion, and dismissed their complaint, finding that because "the policy did not require Allstate to assent to a declaratory judgment action to determine the policy limits ... it therefore breached no good faith obligation by declining to do so." *Greenidge v. Allstate Ins. Co.*, 312 F.Supp.2d 430, 440 (S.D.N.Y. 2004). This appeal followed.

## DISCUSSION

We review a district court's grant of summary judgment *de novo*, reviewing

---

1. Under 28 U.S.C. § 636(c)(1), upon consent of the parties, a designated magistrate judge "may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case."

the evidence in the light most favorable to the non-moving party. *Beechwood Restorative Care Ctr. v. Leeds,* 436 F.3d 147, 151 (2d Cir.2006). Summary judgment is appropriate only if "there is no genuine issue as to any material fact" and the moving party is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

## I. Disclaimer

■ Before we can reach the question of whether Allstate breached its duty of good faith, we must address a threshold question raised by the Greenidges: namely, whether Allstate is barred from arguing that only a single policy limit applies because it failed to issue a timely disclaimer with respect to the second policy.

Noting that the central purpose of a complaint is to provide the defendant with notice of the claims asserted against it, *see* Fed.R.Civ.P. 8(a), the magistrate judge found that the Greenidges' complaint failed to raise a claim based on lack of disclaimer. *See Greenidge,* 312 F.Supp.2d at 436. The Greenidges' complaint grounds their bad faith claim exclusively on Allstate's refusal to settle the Seay Action for $600,000 or to consent to a declaratory judgment action brought by the Seay plaintiffs to determine its limit of liability. The complaint does not make any reference to Allstate's alleged failure to disclaim coverage under the second policy; the Greenidges raised this argument for the first time in their papers opposing the insurer's motion for summary judgment.

■ We have held that plaintiffs who failed to include a claim in their complaint can move to amend the complaint; if summary judgment has been granted to their opponents, they can raise the issue in a motion for reconsideration. *See, e.g., Mauro v. S. New England Telecomms., Inc.,* 208 F.3d 384, 386 n. 1 (2d Cir.2000). The Greenidges took neither of these steps, and a district court does not abuse its discretion when it fails to grant leave to amend a complaint without being asked to do so. *Cf. Horoshko v. Citibank, N.A.,* 373 F.3d 248, 249–50 (2d Cir.2004) ("The [plaintiffs'] contention that the District Court abused its discretion in not permitting an amendment that was never requested is frivolous.").[2] Under these circumstances, the district court did not abuse its discretion when it determined that the Greenidges' claim that Allstate was obligated to disclaim liability under the second policy was untimely. Having determined that the Greenidges' disclaimer arguments were untimely, we need not reach the merits of these arguments.

## II. Bad Faith

■ Once an insurer has assumed the defense of a claim asserted against its insured, "it has a duty under New York law to act in 'good faith' when deciding whether to settle such a claim, and it may be held liable for breach of that duty." *Pinto v. Allstate Ins. Co.,* 221 F.3d 394, 398 (2d Cir.2000). The availability of a cause of action for bad faith signals New York courts' recognition that an insurer has an economic incentive not to settle because allowing a case to go to a jury may result in a verdict for less than the insurer's policy limit. To counterbalance

---

2. The Greenidges have not argued that the district court was required to grant them leave to amend their complaint *sua sponte,* but their reply brief asserts that "CPLR Rule 3025 states that leave to amend a pleading shall be freely giv[en] and that the Court may permit pleadings to be amended before or after judgment to conform to the evidence." Even if we were to construe this statement as an argument that the district court was required to give the Greenidges leave to amend their complaint without being asked to do so, that argument would be unavailing for the reasons stated above.

this incentive, New York courts have instituted a duty of good faith that requires an insurer, when confronted with a settlement offer, to put the insured's interest in avoiding liability in excess of the policy limit on the same level as its own interest in reducing its financial liability. *Id.* at 399.

■■■ Under New York law, an insurer does not breach its duty of good faith when it makes a mistake in judgment or even when it behaves negligently. *Pavia v. State Farm Mut. Auto. Ins. Co.*, 82 N.Y.2d 445, 453, 605 N.Y.S.2d 208, 626 N.E.2d 24 (1993). Rather, a plaintiff must establish that the insurer's actions demonstrated a " 'gross disregard' " for its insured's interests and that the insurer's conduct involved a " 'deliberate or reckless failure to place on equal footing the interests of its insured with its own interests when considering a settlement offer.' " *Pinto*, 221 F.3d at 399 (quoting *Pavia*, 82 N.Y.2d at 453, 605 N.Y.S.2d 208, 626 N.E.2d 24). "Such failure can be shown by 'a pattern of behavior evincing a conscious or knowing indifference to the probability that an insured would be held personally accountable for a large judgment if a settlement offer within the policy limits were not accepted.' " *Id.* (quoting *Pavia*, 82 N.Y.2d at 453–54, 605 N.Y.S.2d 208, 626 N.E.2d 24).

There is no simple test for determining whether an insurer has acted in bad faith. *Id.* ("No pat formula applies to the wide variety of fact patterns that occur, or readily resolves whether an insurer acted in good faith."). Instead, the New York Court of Appeals has adopted a "multifactor approach to bad faith." *New England*

*Ins. Co. v. Healthcare Underwriters Mut. Ins. Co.*, 295 F.3d 232, 241–42 (2d Cir. 2002). Under this "multifactor approach," courts assess, *inter alia*, the plaintiff's likelihood of success on the issue of liability, the potential damages award, the financial burden on each party if the insurer refuses to settle, whether the claim was properly investigated, the information available to the insurer when the demand for settlement was made, and any other relevant proof tending to establish or negate the insurer's good faith in refusing to settle. *Id.* at 241 (citing *Pavia*, 82 N.Y.2d at 454–55, 605 N.Y.S.2d 208, 626 N.E.2d 24).

■■ The central question in this case is whether Allstate breached its duty of good faith when it rejected the Seay plaintiffs' offer to settle for $300,000 and its consent to a declaratory judgment action brought by the Seay plaintiffs to determine whether Seay's injuries triggered a second policy limit. The Greenidges argue that Allstate's refusal to settle constituted bad faith because the insurer acted in "gross disregard" of their interests when it exposed them to the risk of an adverse judgment that significantly exceeded the Policy limits. Allstate argues that the Greenidges' Policy placed it under no obligation to consent to a declaratory judgment action brought by the Seay plaintiffs and that its obligation to act in good faith did not require it to accept settlement offers that exceeded the $300,000 it reasonably believed to be the limit of its liability under the Policy.[3]

---

3. The magistrate judge held that "the plain language of the anti-stacking provision admits of only one construction" and that "it is clear that even though two policies may have been triggered, the policy limit remained $300,000." *Greenidge*, 312 F.Supp.2d at 440. Other federal and state courts that have considered the effect of identical or similar anti-

stacking provisions under New York law have reached the same conclusion. *See, e.g., Greene ex rel. Greene v. Allstate Ins. Co.*, No. 03 Civ. 5974(NRB), 2004 WL 1335927, at *2 (S.D.N.Y. June 15, 2004) (finding, in a case involving an anti-stacking provision identical to the one in this case, that "the existing precedent supports our plain reading of the

The district court found that Allstate was not under any contractual or statutory obligation to consent to a declaratory judgment action brought by the Seay plaintiffs, who were not a party to the Greenidges' Policy. *Greenidge*, 312 F.Supp.2d at 439–40. We agree. *See, e.g., Lang v. Hanover Ins. Co.*, 3 N.Y.3d 350, 787 N.Y.S.2d 211, 214, 820 N.E.2d 855 (2004) ("Plaintiff has no common-law right to seek [declaratory] relief directly from a tortfeasor's insurer, and the statutory right created in Insurance Law § 3420 arises only after plaintiff has obtained a judgment in the underlying personal injury action."). The court then reasoned that because "an insurer is not required to engage in extracontractual conduct," such as consenting to a declaratory judgment action brought by a third-party claimant injured by its insured, Allstate "breached no good faith obligation by declining to do so." *Greenidge*, 312 F.Supp.2d at 439–40. We need not reach the question of whether the existence of an explicit contractual obligation is a necessary antecedent to any claim of breach of the duty of good faith because, in this case, the Greenidges have failed to show that Allstate acted in "gross disregard" of their interests when it rejected the Seay plaintiffs' settlement offer.

Under the circumstances prevailing at the time of the Seay Action, the party best situated to protect the interests of the Greenidges were the Greenidges themselves. Unlike the Seay plaintiffs, the Greenidges had a legal right to commence a declaratory judgment action to determine the extent of Allstate's liability under the Policy. *See Lang*, 787 N.Y.S.2d at 213, 820 N.E.2d 855 ("There is no dispute that parties to an insurance contract—the issuer, a named insured or a person claiming to be an insured under the policy—may bring a declaratory judgment action against each other when an actual controversy develops concerning the extent of coverage, the duty to defend, or other issues arising from the insurance contract."). The Greenidges could have protected themselves from risk by petitioning the state court judge to stay the proceedings in the Seay Action while they pursued such an action. Of all the parties in this case, the Greenidges were in the best position to bring a declaratory judgment action, which would have resolved the question of how many policy limits were triggered by Seay's injuries and allowed the parties to reach a settlement shielding the Greenidges from any liability. We cannot say that Allstate displayed a "gross disregard" for the Greenidges' interests

---

Limitation Clause as preventing plaintiffs from aggregating the pay-outs available through the two renewal policies covering the period in which plaintiffs' injuries occurred. Accordingly, defendant's liability for plaintiffs' injuries is limited to $300,000."); *Hiraldo v. Allstate Ins. Co.*, 8 A.D.3d 230, 778 N.Y.S.2d 50, 51 (2004) (interpreting virtually identical policy language and finding that a claim based on lead poisoning that occurred over three consecutive policy periods "arose out of a single occurrence, [] constituted one loss," and thereby limited the insurer's liability to a single policy limit of $300,000), *aff'd* 5 N.Y.3d 508, 806 N.Y.S.2d 451, 840 N.E.2d 563 (2005); *In re Liquidation of Midland Ins. Co.*, 269 A.D.2d 50, 709 N.Y.S.2d 24, 31

(2000) (interpreting similar policy language and finding that "the purpose of defining all exposure as one occurrence is to make clear that only one deductible will apply, and that the limit of liability, where an insurer has issued renewal policies, shall be the policy limits for one policy, rather than the aggregate for all policies issued. Otherwise, an insurer that issues a $1 million liability policy renewed 20 times could find itself liable for $20 million in damage claims for the same injury."). We need not decide whether one or two policy limits apply to determine whether Allstate breached its duty of good faith when it rejected the Seay plaintiffs' demand that it consent to a declaratory judgment action on this question.

when it rejected a settlement offer contingent upon its consent to a declaratory judgment action brought by the Seay plaintiffs when the Greenidges could easily have brought such an action themselves.

Alternatively, the Greenidges could have insulated themselves from the risk of a verdict exceeding the limits of their Policy by entering into any number of agreements with the Seay plaintiffs. For instance, the Greenidges could have entered into an agreement with the Seay plaintiffs whereby the Greenidges permitted the court to enter judgment against them in the amount of $600,000. The Seay plaintiffs could then have agreed to collect half of that amount from Allstate and the Greenidges could have assigned their bad faith claim against Allstate to the Seay plaintiffs in exchange for absolution from any liability. The Seay plaintiffs could then have pursued the bad faith claim against Allstate in the hopes of recovering a second policy limit while the Greenidges avoided any liability for the infant's injuries. As Allstate's counsel noted at oral argument, parties in the Greenidges' position routinely enter into such agreements to avoid the kind of outcome that occurred in this case. Indeed, such agreements are extremely common in cases like this one. *See, e.g., Hiraldo v. Allstate Ins. Co.,* 8 A.D.3d 230, 778 N.Y.S.2d 50, 51 (2004), *aff'd* 5 N.Y.3d 508, 806 N.Y.S.2d 451, 840 N.E.2d 563 (2005).

In this case, there were no obstacles preventing the Greenidges from entering into such an agreement with the Seay plaintiffs. The Greenidges were represented in the underlying lawsuit not only by counsel appointed by Allstate, but by private counsel who could have taken any number of steps to shield the Greenidges from financial liability for Seay's injuries. Where, as here, the Greenidges were represented by private counsel and had ample

opportunity to protect their own interests, Allstate's refusal to consent to a declaratory judgment action brought by the Seay plaintiffs did not constitute a " 'deliberate or reckless failure' " to consider the Greenidges' interests in negotiating a settlement. *See Pinto,* 221 F.3d at 399 (quoting *Pavia,* 82 N.Y.2d at 453, 605 N.Y.S.2d 208, 626 N.E.2d 24). Unfortunately, it was the Greenidges' own actions, and not Allstate's, that put them at risk of a large adverse judgment.

The law of bad faith is not intended to reduce the incentives of insured parties to protect their own interests in situations where they are empowered to do so. In the instant case, the Greenidges had ample opportunity to protect their own interests. Allstate was aware of the options available to the Greenidges, and it was also aware that the Greenidges were represented by private counsel. Allstate was therefore entitled to assume that the Greenidges would take steps to protect their own interests. The Greenidges' failure to do so does not convert Allstate's refusal to accept the Seay plaintiffs' settlement offer into a display "of recklessness on the part of the insurer." *Id.* at 400, 605 N.Y.S.2d 208, 626 N.E.2d 24.

In light of the opportunities available to the Greenidges to protect their own interests, we cannot say that Allstate breached its duty of good faith when it rejected the Seay plaintiffs' offer to settle on the condition that the insurer consent to a declaratory judgment action brought by the injured child to determine the limits of its liability under the Greenidges' Policy.

## CONCLUSION

For the reasons stated above, we AFFIRM the judgment of the district court.