20-3141-cv
*Cannady v. Bd. of Trustees of the Boilermaker-Blacksmith Nat'l Pension Tr., et al.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.   WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").   A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 18th day of January, two thousand twenty-two.

PRESENT:
> ROBERT D. SACK,
> JOSEPH F. BIANCO,
> > *Circuit Judges*.
> STEFAN R. UNDERHILL,[1]
> > *District Judge*.

_____

Steven Cannady,

> *Plaintiff-Appellant*,

> v.                                                                     20-3141-cv

Board of Trustees of the Boilermaker-
Blacksmith National Pension Trust,
Boilermaker-Blacksmith National Pension
Trust,

> *Defendants-Appellees*.

_____

FOR PLAINTIFF-APPELLANT:          DENISE M. CLARK, Clark Law Group, PLLC,
                                                          Washington, DC.

_____

[1] Chief Judge Stefan R. Underhill, United States District Court for the District of Connecticut, sitting by designation.

FOR DEFENDANTS-APPELLEES: NATHAN A. KAKAZU, Blake & Uhlig, P.A., Kansas City, KS.

Appeal from an order and judgment of the United States District Court for the Northern District of New York (Scullin, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order and judgment of the district court are **AFFIRMED**.

Plaintiff-appellant Steven Cannady appeals from the August 17, 2020 order and judgment of the United States District Court for the Northern District of New York (Scullin, *J.*) granting the motion for summary judgment filed by defendants-appellees Board of Trustees of the Boilermaker-Blacksmith National Pension Trust (the "Trustees") and Boilermaker-Blacksmith National Pension Trust (the "Trust," and together with the Trustees, the "Pension Trust") and denying Cannady's cross-motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

In January 2017, the Pension Trust reduced certain benefits in the Thirteenth Restatement of the Pension Plan Document (the "Plan") after its actuaries projected that it would enter "critical" funding status as defined in the Pension Protection Act of 2006. 29 U.S.C. §1085(b)(2). As such, the Pension Trust adopted Amendment 4 to the Plan ("Amendment 4") that, among other things, reduced the monthly amount of disability pension benefits for many participants, and had an effective date of October 1, 2017. Cannady is a participant in the Trust and, on August 8, 2017, submitted his application for a disability pension benefit. The Pension Trust determined that, because Cannady's Annuity Starting Date ("ASD") under the Plan was November 1, 2017, and because (absent an exemption not applicable to Cannady), Amendment 4 applied to all Plan

disability pension benefits with an ASD on or after October 1, 2017, Cannady was subject to the reduced benefits under Amendment 4.   This lawsuit followed.

Cannady brought claims against the Pension Trust alleging that it failed to properly administer his pension plan consistent with the Employee Retirement Income Security Act of 1974 ("ERISA") when it calculated his benefits amount based on provisions in Amendment 4, as opposed to the pre-Amendment terms of the Plan.   Specifically, Cannady alleged ERISA claims for wrongful denial of benefits in violation under 29 U.S.C. § 1132(a)(1)(B), as well as breach of fiduciary duty in violation of 29 U.S.C. §§ 1104(a)(1)(D) and 1109(a), brought pursuant to 29 U.S.C. § 1132(a)(3).

On appeal, Cannady challenges the district court's grant of summary judgment in Pension Trust's favor, arguing, *inter alia*, that the district court erred in: (1) concluding that Cannady's benefits were properly calculated using his ASD, rather than using the date on which he submitted all necessary documentation, which would have resulted in calculating his benefits under the pre-Amendment 4 term; and (2) finding that Cannady's alternative claim—that Amendment 4 violated ERISA's anti-cutback rule—was not properly raised in the complaint and thus should not be considered on summary judgment.

"In an ERISA action, we review the district court's grant of summary judgment based on the administrative record *de novo*." *Hobson v. Metro. Life Ins. Co.*, 574 F.3d 75, 82 (2d Cir. 2009); *Jordan v. Ret. Comm. of Rensselaer Polytechnic Inst.*, 46 F.3d 1264, 1269 (2d Cir. 1995). We assume the parties' familiarity with the underlying facts and the procedural history of the case, which we reference only as necessary to explain our decision to affirm.

3

## I. Entitlement to Benefits Claim

Cannady argues that the district court erred in finding that the Pension Trust properly calculated his disability pension benefit under the Amendment 4 terms pursuant to his ASD, rather than the date he submitted his completed application for benefits.   Specifically, Cannady contends that, because he submitted all items required for eligibility before October 1, 2017 (the date Amendment 4 went into effect), his disability pension benefit should have been calculated pursuant to the prior version of the Plan.   He further asserts that Amendment 4 created an "internal conflict" and "ambiguity about eligibility" by effectively making the ASD an eligibility term without amending the definition of ASD to make that clear.   Appellant's Br. at 11–12.   We disagree.

A claim under an ERISA plan "stands or falls by 'the terms of the plan,' § 1132(a)(1)(B), a straightforward rule of hewing to the directives of the plan documents that lets employers establish a uniform administrative scheme, [with] a set of standard procedures to guide processing of claims and disbursement of benefits." *Kennedy v. Plan Adm'r for DuPont Sav. and Inv. Plan*, 555 U.S. 285, 300 (2009) (internal quotation marks omitted); *see also Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995) (noting that ERISA's statutory scheme "is built around reliance on the face of written plan documents").   Where, as here, "the relevant plan vests its administrator with discretionary authority over benefits decisions . . . the administrator's decisions may be overturned only if they are arbitrary and capricious." *Roganti v. Metro Life Ins. Co.*, 786 F.3d 201, 210 (2d Cir. 2015).   Under the arbitrary and capricious standard, "a court may overturn a plan administrator's decision to deny benefits only if the decision was 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Celardo v. GNY Auto. Dealers Health & Welfare Tr.*, 318 F.3d 142, 146 (2d Cir. 2003) (quoting *Pagan v. NYNEX*

4

*Pension Plan*, 52 F.3d 438, 442 (2d Cir. 1995)).

Additionally, "[i]nterpretation of the terms of an ERISA pension plan is governed by the 'federal common law of rights and obligations under ERISA-regulated plans.'" *Aramony v. United Way of Am.*, 254 F.3d 403, 411 (2d Cir. 2001) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110 (1989)). "In applying these principles, we interpret and enforce 'unambiguous language in an ERISA plan' according to its 'plain meaning.'" *Id.* at 412 (internal citations omitted). "Language is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." *Id.* (internal quotation marks and citations omitted). Although we conduct review under the arbitrary and capricious standard for discretionary determinations, such as those based on ambiguous language, we "subject the determination that an ERISA plan provision is unambiguous to *de novo* review." *Aramony v. United Way of Am.*, 191 F.3d 140, 149 (2d Cir. 1999).

As set forth in the well-reasoned decision of the district court, the plain language of the Plan—both pre- and post-Amendment—unambiguously states that Cannady's benefits are to be calculated based on the ASD. Because his ASD was not until after Amendment 4's effective date, Amendment 4's revised calculation terms apply to Cannady's benefits. Pursuant to the pre-Amendment 4 rule, Section 4.10 provided: "The monthly Disability Pension shall be equal to the Basic Pension and Regular or Special Past Service Pension, if any, the Participant would receive if he were age 65 at the time he became totally and permanently disabled." Joint App'x at 118. Section 4.03(a) then made clear that the Basic Pension was calculated based upon a participant's ASD. *See* Joint App'x at 109 ("For Basic Pensions with an *Annuity Starting Date* on or after

5

October 1, 2003, the monthly amount of the Basic Pension shall be equal to [a set formula]." (detailing formula) (emphasis added)). Reading these terms together, it is abundantly clear that, pre-Amendment, the relevant date for disability pension benefits was the ASD.

The same interpretation of the Plan applies to the plain language under Amendment 4. Pursuant to Amendment 4, Section 4.10 was modified to read: "For Disability Pensions for Participants . . . with an *Annuity Starting Date* on or after October 1, 2017, the monthly Disability Pension shall be calculated in accordance with [the rules as amended]."[1] Joint App'x at 201 (emphasis added). In light of the foregoing, we agree with the district court that the language of the Plan unambiguously provides that the ASD is the relevant date to determine the calculation of benefits. Cannady's Notice of Award from the Social Security Administration made clear that he was disabled under its rules beginning May 25, 2017, "entitl[ing him] to monthly disability benefits beginning November 2017." Joint App'x at 271; *see also id.* at 66 ("The Annuity Starting Date for a Disability Pension shall not be earlier than the first day of the sixth month of disability."). As such, the Plan's Annuity Starting Date for Cannady was properly set at November 1, 2017, and Cannady's benefits were correctly calculated pursuant to the Plan's rules as amended.

Although Cannady makes several arguments as to why he believes that Amendment 4's language is ambiguous, we find each of those arguments unpersuasive. Cannady asserts that the Plan language reasonably supports his interpretation that Amendment 4 does not apply to him

---

[1] Although Amendment 4 exempts some participants from the reduction in benefits under a "grandfather" provision, Cannady does not argue that any such exemption applies to him. Moreover, Cannady does not dispute that, if Amendment 4 applies, his reduced benefits were properly calculated under the Amendment. Thus, the calculation formula is immaterial for purposes of this appeal.

because he submitted his application before the October 1, 2017 effective date. That interpretation, however, is entirely unsupported by the text and structure of the Plan. For example, the Plan explicitly defines the filing date in Section 8.01(a), and Amendment 4 makes no reference to that provision or to the term "filing date"; instead, it explicitly references (consistent with the pre-Amendment language) the ASD as the relevant date for determining which benefits are impacted by Amendment 4. In fact, Cannady's strained interpretation would require us to ignore explicit, contradictory language in Amendment 4. We have emphasized that a plan provision should not be interpreted in a manner that is "inconsistent with its plain words" or "render[s] some provisions of the plan superfluous." *Miles v. N. Y. State Teamsters Conf. Pension and Ret. Fund Emp. Benefit Plan*, 698 F.2d 593, 599 (2d Cir. 1983). To the extent that Cannady also argues that ambiguity is created by Amendment 4's failure to simultaneously amend the ASD definition contained in Section 1.10 of the Plan, we find that argument similarly unconvincing. There was no need for any clarifying amendment to the ASD definition in Section 1.10 because (as noted above) that definition has continuously governed which rules apply to a particular benefit even before Amendment 4, and Amendment 4 uses that the ASD term in the exact same manner as previously defined.

In short, Cannady has failed to point to any language in the Plan, even when analyzed in the context of the entire integrated agreement, that would allow Amendment 4 to be reasonably interpreted as only applying to participants who submitted their benefits application after the Amendment's effective date of October 1, 2017, regardless of their ASD. Instead, the plain and unambiguous language of Amendment 4 provides that its applicability depends on the ASD and, because Cannady's ASD was after Amendment 4's effective date, he was subject to the reduced

7

benefits calculated under Amendment 4.[2]

Accordingly, the district court properly granted summary judgment in Pension Trust's favor on Cannady's ERISA claim for wrongful denial of benefits under Section 1132(a)(1)(B).[3]

## II.     Anti-Cutback Claim

Cannady also argues that the district court erred in failing to consider his separate claim that Amendment 4 violates ERISA's anti-cutback rule, 29 U.S.C. § 1054(g)(1),[4] based upon its conclusion that such a claim was not contained in the complaint and was raised for the first time on summary judgment.   Cannady contends, *inter alia*, that his assertion in the complaint of breach of fiduciary duty under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3)—a "catchall" ERISA provision, *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996)—should have been sufficient to put defendants on notice that he was bringing the anti-cutback claim and, thus, the district court was required to address that claim on summary judgment.   We review the district court's determination that Cannady failed to properly raise any anti-cutback claim for abuse of discretion. *See Greenidge v. Allstate Ins. Co.*, 446 F.3d 356, 361 (2d Cir. 2006).   As set forth below, we find no such abuse of discretion here.

The complaint does not reference Section 1054(g)(1), which is the particular provision that would apply to any claim for an alleged violation of ERISA's anti-cutback rule.   Moreover, in

---

[2] Pension Trust argues in the alternative that, even assuming *arguendo* that the language of Amendment 4 is ambiguous, its interpretation was not arbitrary or capricious.   However, in light of our conclusion as to the unambiguous nature of the Plan's language, we do not address this alternative argument.

[3] To the extent Cannady asserted a separate breach of fiduciary claim under Section 1132(a)(3) based on the same legal theory, that claim, as found by the district court, is duplicative of his wrongful denial of benefits claim under Section 1132(a)(1)(B) and cannot survive summary judgment for the same reasons outlined above.

[4] ERISA's anti-cutback rule generally provides that "[t]he accrued benefit of a participant under a plan may not be decreased by an amendment of the plan . . . ."   29 U.S.C. § 1054(g)(1).

addition to Cannady's failure to invoke the applicable statutory provision, there are no factual allegations in the complaint that could be fairly read to articulate such a violation; rather, as discussed extensively above, the complaint was focused entirely upon the claim that Pension Trust's use of the ASD to determine that Amendment 4 applied to Cannady's benefits was inconsistent with the terms of the Plan. Cannady has not pointed to any factual allegations in the complaint that would have provided adequate notice to Pension Trust that a separate claim for an alleged violation of ERISA's anti-cutback rule was being asserted. Although Cannady contends that the mere citation to the "catch-all provision" of Section 1132(a)(3) was sufficient under the circumstances to provide such notice to Pension Trust, the district court did not abuse its discretion in determining otherwise under the circumstances of this case. As Pension Trust correctly noted, ERISA imposes a wide variety of duties on fiduciaries, *see generally* 29 U.S.C. § 1104, and thus this general reference to the catch-all provision under Section 1132(a)(3), without more, provides inadequate notice to Pension Trust as to the precise claim being asserted by Cannady. Nor does Cannady assert that this claim was the subject of discovery or any discussion between the parties.

If Cannady wanted to amend his complaint to include an anti-cutback claim, he had ample opportunity to do so before the filing of the cross-motions for summary judgment. *See Greenidge*, 446 F.3d at 361 (noting that the district court "does not abuse its discretion when it fails to grant leave to amend a complaint without being asked to do so"). "One of the core purposes" of the Federal Rules of Civil Procedure is to "place opposing parties on notice" about each party's claims and defenses in order to "prevent surprise or unfair prejudice." *Reives v. Lumpkin,* 632 F. App'x 34, 35 (2d Cir. 2016) (summary order) (citing *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.,* 402 U.S. 313, 350 (1971)). This purpose was certainly frustrated by Cannady's mere

9

assertion of the omnibus ERISA provision as part of a breach of fiduciary duty claim based on other grounds. Finally, although Cannady argues that Pension Trust was not prejudiced by any lack of notice in the complaint of the anti-cutback claim because it had the opportunity to address the claim in the cross-motions for summary judgment, that contention ignores Pension Trust's articulation of the extra-record evidence it would have adduced to support its decision to adopt Amendment 4 under the Pension Protection Act if the anti-cutback claim had been properly raised.

In short, Cannady failed to provide a sufficient basis for consideration by the district court of an anti-cutback claim that was raised for the first time at the summary judgment stage without leave of court. *See Greenidge*, 446 F.3d at 361 (declining to reach the merits of an argument raised for first time in opposition to summary judgment); *see also Lyman v. CSX Transp., Inc.*, 364 F. App'x 699, 701 (2d Cir. 2010) ("An opposition to a summary judgment motion is not the place for a plaintiff to raise new claims." (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1183, at 23 n.11 (3d ed. 2004))).

Accordingly, we conclude that the district court did not abuse its discretion in declining to address Cannady's anti-cutback claim that was raised for the first time in his summary judgment motion.[5]

\* \* \*

---

[5] In his reply, Cannady requests that we remand this case back to the district court to decide the question of whether disability pension benefits are early retirement benefits protected by ERISA's anti-cutback rule, or whether, as Pension Trust argues in its brief, welfare benefits are not protected by the rule. *See* Reply Br. at 1–6; Appellees' Br. at 36–37 (citing *Rombach v. Nestle USA, Inc.*, 211 F.3d 190, 193 (2d Cir. 2000)). Since this question looks to the merits of the anti-cutback claim, and we have already concluded that the district court did not abuse its discretion in declining to address this belated claim when granting summary judgment to Pension Trust, we find no basis for remand on this issue.

We have considered Cannady's remaining arguments and find them to be without merit.

Accordingly, we **AFFIRM** the order and judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court